[S. F. No. 1931. Department Two.—December 27, 1901.]

GEORGE O. PERRY, Plaintiff, and F. H. PITMAN, Intervener, Appellants, v. MRS. A. M. PARROTT, and other Interveners, Respondents.

BUILDING CONTRACT—SECURITY FOR NOTE—SEPARATE ASSIGNMENTS—PLEDGE—TRUST.—Where an assignee of moneys due and to become due under a building contract, as security for the contractor's note to him, reassigned the note to one person and the security to another, if the latter takes the security as pledge-holder and trustee for the former, it is his right and duty to enforce the security for the benefit of the owner of the note, who is equitable assignee of the security, and is entitled to have it enforced for his benefit.

ID.—TITLE OF ASSIGNEE OF SECURITY—RIGHT OF ENFORCEMENT.—The assignee of the security either took it as pledge-holder and trustee for the owner of the note, or took no title. He cannot enforce the security for his own benefit, apart from the ownership of the note secured; but the owner of the note, even if the assignee of the security took no title, can enforce the security as equitable assignee thereof.

ID.—INSOLVENCY OF CONTRACTOR—PRESENTATION AND REJECTION OF CLAIM.—Where the contrator became insolvent, the mere presentation of the note as an unsecured claim against the estate, and the rejection of it, as having been secured by the assignment of the moneys due on the building contract, without further effort to enforce the note against the estate of the insolvent contractor, cannot preclude the enforcement by the holder of the note of the security of the contractor's demand against the owner of the building.

ID.—SUPERIORITY OF SECURITY OVER CLAIMS OF MATERIAL-MEN—DELAY IN NOTICE TO OWNER.—Where the holder of the note took it without notice of the claims of material-men, and no notice of their claim was given to the owner of the building until after the expiration of thirty-five days from the completion of the work, and after the subsequent *bona fide* purchase of the note, the right of the purchaser to enforce the note and security is superior to the claims of the material-men against the fund due to the contractor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

G. R. Lukens, and J. A. Wright, for Appellant.

D. H. Whittemore, Peri E. Allen, W. H. Fowler, and Duncan Hayne, for Respondents.

HENSHAW, J.—This appeal is from the judgment, the contention of appellants being that, upon the findings, they were entitled to the relief which they asked.

The evidence not being before us, the history of the transactions between these parties is to be derived from the admissions of the pleadings and the findings of the court. In chronological order, they are as follows: The San Francisco Furniture Manufacturing Company, a corporation, was under contracts with defendant, Mrs. Abby M. Parrott, to do certain work upon her building in San Francisco, known as the Parrott Building, and none of the contracts was recorded. The work done under the contracts amounted to $2,223.63, and the work was completed at a time about the middle of September, 1896. In the performance of its contracts the San Francisco Furniture Manufacturing Company purchased material and became indebted to certain other persons and firms, some of whom have become interveners and claimants in this action. About the 26th of August, 1896, and during the progress of the work upon these contracts, the furniture company needing money, borrowed from John C. Hughes, one of its directors, the sum of $1,400. The debt was evidenced by the note of the corporation for $1,400. To secure the payment of the note, the corporation, at the same time and as part of the transaction, executed and delivered to Hughes an assignment of the moneys due, or to fall due, to it from Mrs. Parrott upon account of the contracts. In September, 1896, Hughes served due notice of the assignment upon Mrs. Parrott. Upon the 9th of October, 1896, the San Francisco Furniture Manufacturing Company was adjudged an insolvent debtor, and on the 23d of October, 1896, John C. Hughes, above mentioned, was elected assignee in insolvency. On the 14th of December, 1896, Hughes transferred to George O. Perry, plaintiff herein, the claim of the San Francisco Furniture Manufacturing Company against Mrs. Parrott, which had been assigned to him by the corporation, as collateral security for the $1,400 promissory note. At all times Hughes and Perry had knowledge of the sums due and unpaid from the manufacturing company to the material-men.

On or before January 29, 1897, Hughes, for value, sold and delivered the $1,400 promissory note of the San Francisco Furniture Manufacturing Company to F. H. Pitman, intervener and appellant herein. On the 29th of January, Pitman executed and presented to Hughes, then assignee in insolvency, a formal claim of debt without security, in which was set forth that the said Pitman "has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of satisfaction or security whatsoever." Hughes rejected this claim, and filed it in his schedule of claims presented, with the statement as follows: "This claim is for gold coin loaned by John C. Hughes to said insolvent, for the purpose of paying laborers' wages, on or about the fourteenth day of August, 1896; to secure this claim an agreement was made by said insolvent with said Hughes. . . . Said claim was further secured by an assignment to said Hughes of all moneys owing said insolvent by Mrs. A. M. Parrott. Subsequent to the loan of said money, said Hughes, for full value paid him by said Wilson and Gaskill, made an assignment of said indebtedness for $1,400, together with all security which he held therefor, to one ——, who, as said Hughes is informed, holds said mortgage in trust for said W. I. Wilson and H. D. Gaskill. Said assignee knows no reason why said claim is not a just claim, but states that he has been requested by the president of said insolvent corporation, also, not to approve said claim by certain of the creditors, and on that ground only said assignee does not approve the same." In April, 1897, Hughes resigned as assignee, and George T. Gaden was appointed in his place. On the 7th of July, 1897, plaintiff, Perry, commenced this action against the defendant, Mrs. Parrott, to recover the amount due from her for the work done by the furniture company, basing his right of action upon the assignment by the company to Hughes and the assignment from Hughes to him, and alleging that he was the owner and holder of the demand. The defendant Mrs. Parrott's attitude in the litigation, may be at once stated and disposed of. The amount of money due from her is not in dispute. She seeks merely the guidance of the court to aid her in paying it to the parties to whom it is justly due, and is, so far as these controversies are concerned, under the stipulation of the parties, a mere stakeholder of the funds. Twenty days after Perry com-

menced his action against Mrs. Parrott, and over ten months after all work upon the contracts was completed, the Humboldt Lumber Mill Company, intervener herein, served written notice upon Mrs. Parrott, alleging that it had furnished material to the manufacturing furniture company, in fulfillment of its contracts, and requested her to withhold sufficient money to pay its claim; and, six days later, Harris & Jones served a similar notice. Thereafter these material-men filed their complaints in intervention, praying judgment against the funds in the hands of Mrs. Parrott, respectively, for the amounts of their claims. Gaden, the assignee, likewise intervened, alleging that the assignment made by the San Francisco Furniture Manufacturing Company to Hughes was without authority, and prayed that Perry take nothing, and that the funds due from Mrs. Parrott be recovered by him as assignee. On January 2, 1898, intervener Pitman, by leave of court, filed his complaint in intervention. Pitman set up the making of the promissory note by the insolvent corporation to Hughes, and transfer to him for value, and further alleged that Hughes "duly assigned in writing to George O. Perry, plaintiff in this action, all his right, title, and interest in the said security for the said promissory note; and that at the time when this intervener so as aforesaid filed his claim in insolvency against the said corporation, the said George O. Perry held and owned the security aforesaid for this intervener's use and behoof, and commenced, prosecuted, and is prosecuting, this action for the use, benefit, and behoof of this intervener, and in order to apply the proceeds toward the payment of the said promissory note according to the intent and purpose for which the said pledge, or security, was given as aforesaid." He then set up the fact that his claim presented to the assignee had not been allowed; that he had taken no part in the insolvency proceedings, either in the election of the assignee or in the sharing of dividends. He asked that Perry recover upon his complaint, warranting that the amount of the recovery should be applied to the payment of the promissory note, and that if more was recovered than sufficient to extinguish that obligation, the rest should be paid to the maker of the note, or to its legal representative. The defendant and interveners made denial of these allegations, but, so far as the record discloses, the plaintiff, Perry, made no answer thereto.

Upon this condition of the pleadings, trial was had, and, as to the standing of these appellants, the court found as follows:—

"That said Pitman, intervener herein, is still the owner and holder of said note, and does not ask or claim anything from the defendant, Parrott, under or upon the same, nor anything out of the said funds in her hands as aforesaid.

"That the plaintiff, Perry, is still the holder of the said written assignment, hereinabove set forth, and made to the said Hughes individually by the said corporation contractor as aforesaid, and which was thereafter transferred and assigned by said Hughes to this plaintiff, Perry, but said promissory note, to secure which said written assignment was given by said corporation contractor to said Hughes, has never been either sold, transferred, set over, or assigned to said Perry by the said Hughes, or by said Pitman, and is still owned, held, and controlled by said Pitman, and is the promissory note proved by the said Pitman in the said matter of the insolvency of the said corporation contractor."

From these findings it deduced the following conclusions of law:—

"1. That the plaintiff, Perry, is not entitled to recover anything by his said action, either from the defendant, Parrott, individually, or out of the said moneys in her hands, and that the defendant, Parrott, is entitled to judgment against said plaintiff for her costs.

"2. That the intervener Pitman does not ask, and is not entitled to, any judgment, either against the defendant, Parrott, or against the said moneys in her hands, or against the other interveners herein, or any of them, or for costs from any one."

It decrees that the material-men must first be paid, and if there was any balance left of the fund, it must go to the assignee in insolvency.

There is an absence of findings upon the essential averments in the Pitman complaint, to the effect that the assignment of the security to Perry was for the use and benefit of Pitman; that Perry is the holder of the security as pledgee and trustee, and is prosecuting the action to recover upon the security for the sole use and benefit of the holder of the principal debt. Not having the evidence before us, the absence of findings

upon these important questions makes it impossible to discover the actual nature of the transactions between these parties; but it is apparent, from the findings of the court, and its conclusions of law therefrom, and from the argument in the briefs of respondents, that the determination was that Perry took nothing by the assignment, because the security was but collateral and incident to the principal debt, ownership of which had passed to another; that Perry was regarded, not as the owner of the security in his own right, but, as the court phrases it, "was merely the holder of said written assignment." As the assignment was but an incident to the principal debt evidenced by the promissory note, title to which was, and was found to be, in Pitman, it is undoubtedly true that one who pretends to take independently and in his own right, and not as pledge-holder for another, security given as collateral to the principal indebtedness, acquires no right to enforce this secondary and collateral obligation; but, upon the other hand, it is quite permissible to place the legal title to such collateral securities in the hands of a pledgee agreed upon by the parties. That pledgee would become a trustee for the owner of the principal debt, with the right and duty to enforce the collateral obligation for the benefit of his principal, according to its terms and tenor. As between Perry and Pitman, therefore, (Pitman being found by the court to have paid full value for the promissory note, and to be the owner of it,) either Perry took legal title to the security as pledge-holder and trustee for Pitman, which is the allegation of Pitman's complaint, or Perry took no title whatsoever. If the first be the fact, then there is an absence of finding upon it. If the second be the fact, and the legal title did not vest in Perry, then, by equitable assignment, assuredly Pitman was entitled to the benefit of the security. The view of respondents is (quoting from their brief),—"Perry took nothing; the assignment to him was a nullity. He did not get the legal title even," (citing *Polhemus* v. *Trainer*, 30 Cal. 685). Accepting this view, it must still result under the finding that Pitman is the owner and holder of the promissory note for value, and that he is, by equitable assignment, likewise the owner of the security. Nor is it accurate to say, as do respondents, "Pitman does not even pose as the owner of the claim against Mrs. Parrott." Pitman distinctly avers that he is the

equitable owner of it, entitled to the fruits of the litigation, and asks merely that the moneys in being paid to his trustee, Perry, be at the same time applied to the extinguishment of his debt. So, if it be that Perry did not even take the legal title, no reason can be discerned why Pitman should not have been awarded directly the relief which he sought indirectly, or, in other words, why the court did not decree Pitman to be the equitable owner of the assignment, and order so much of the funds as might be necessary to be paid over in extinguishment of his debt.

Nor can it be perceived why Pitman should be deemed to have forfeited his right to enforce this security because of the single fact that he presented to the assignee in insolvency a verified claim, stating that the debt due him from the corporation insolvent, and evidenced by its promissory note, was wholly unsecured. Why he did this, we are of course unadvised. But the claim was rejected by the assignee in insolvency, and Pitman never took part in any of the insolvency proceedings, nor was the position of any person affected or changed to his injury or detriment by reason of the filing of the rejected claim. Section 48 of the Insolvent Act of 1895, provides: "When a creditor has a mortgage or pledge of real or personal property of the debtor, or a lien thereon for securing the payment of a debt owing to him from the debtor, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property; . . . but the creditor may release or convey his claim to the assignee and be admitted to prove his whole debt. .... If the property is not sold or released and delivered up, or its value fixed, the creditor shall not be allowed to prove any part of his debt.'" Nothing contemplated by this section did Pitman do, and the assignee in insolvency, knowing of the security, was therefore justified in rejecting the claim. If Pitman's mistaken or false claim had been allowed, and he had taken part in the proceedings in insolvency, doubtless he would have been held to have waived his security, but such was not the case, and, his claim having been rejected, no person having suffered detriment or loss by its filing, we experience difficulty in seeing how it can be said that he has abandoned his right to enforce the security for his debt, which at the time he presented his claim, for aught that appears, he may not have known of, and may afterwards have discovered.

Having thus reached the conclusion that, so far as the findings disclose, Pitman appears to have been at least the equitable owner of the security, and entitled therefore to its enforcement, we are brought to consider whether his claim upon the fund is superior or subordinate to the claims of the material-men and the interveners, the Humboldt Lumber Mill Company, and Harris & Jones. The findings in this regard disclose that the promissory note was given and the assignment of security made during the progress of the work. Hughes and Perry, it is found, had knowledge of the claims of the material-men against the furniture company. There is no showing that Pitman had any such notice or knowledge, and, for all that appears, he was a purchaser for value, and without notice. The contracts were never recorded, and the work was completed about the middle of September, in 1896. These material-men filed no notice until months after the completion of the work, and some days after the commencement of this action. Pitman bought the promissory note in January, 1897, more than thirty-five days after the completion of the work, and, as has been said, so far as appears, bought it innocently, without the slightest knowledge of the claims of the material-men. Under this state of facts, then, this case is the parallel of *First National Bank* v. *Perris*, 107 Cal. 55. Conceding the view that the payee of the promissory note, in taking the assignment before the completion of the work, stood, as to the material-men, in no better position than the San Francisco Furniture Manufacturing Company itself would have stood, that condition of affairs obtained only until the expiration of thirty-five days from the completion of the work, when the note had passed into the hands of an innocent purchaser. So that Pitman's claim as an innocent purchaser without notice, after the expiration of thirty-five days from the completion of the work, is superior to that of the material-men, whose first demand upon the fund was made long after he had become the owner of the security.

For the foregoing reasons the judgment is reversed and the cause remanded.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.