EDWARDS et al. v. BAY STATE GAS CO.

In re HINCHMAN et al.

(Circuit Court, D. Delaware. March 20, 1911.)

No. 203.

*(Syllabus by the Court.)*

ASSIGNMENTS (§ 78\*)—EFFECT ON COLLATERAL SECURITY.

It is a general rule that, in the absence of an agreement to the contrary, the assignee for value of a note, bill, judgment, decree or other evidence of indebtedness, for the payment of which the assignor holds collateral security, is in equity entitled, by virtue of the assignment to him of the principal obligation or evidence of indebtedness, to the collateral as such, although not named in the instrument of assignment, and regardless of his knowledge or lack of knowledge of the existence of such collateral.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 145; Dec. Dig. § 78.\*]

In Equity. Bill by Jacob Edwards and others against the Bay State Gas Company. In the matter of the petitions of Charles S. Hinchman and the Arizona Blue Bell Copper Company. Decree for petitioner Hinchman.

Charles H. Burr, for petitioner Hinchman.
Walter H. Hayes, for petitioner Arizona Blue Bell Copper Co.

BRADFORD, District Judge. George W. Pepper as receiver of the Bay State Gas Company, hereinafter referred to as the gas company, obtained June 14, 1907, in the circuit court of the United States for the eastern district of Pennsylvania a decree against John Edward Addicks for the sum of $1,399,080. This decree remains unsatisfied. Subsequently the Arizona Blue Bell Copper Company, hereinafter referred to as the copper company, at the instance and by the procurement of Addicks who was its president, executed under seal August

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2, 1907, an assignment for the considerations therein mentioned to Pepper as such receiver of all royalties or profits which were then or might become payable to the copper company under a certain contract between it and John L. Elliot, dated September 15, 1906, as collateral security for the payment of the above mentioned decree. Charles S. Hinchman, one of the petitioners, made November 13, 1907, the following written offer to the receiver:

George Wharton Pepper, "November 13, 1907.
        Receiver Bay State Gas Co. (of. Delaware).

Dear Sir: I hereby offer to pay you on or before June 15th, 1908, one hundred thousand dollars in cash for an assignment by you to me, or in accordance with my direction, of the decree entered in your favor against J. Edward Addicks, in the sum of one million three hundred and ninety nine thousand and eighty dollars, on June 14, 1907, by the United States Circuit Court for the Eastern District of Pennsylvania (in the suit of Pepper, Receiver, v. Addicks, Oct. Sessions, 1903, No. 41, In Equity,) and of all claims that you have against the said Addicks. In case you accept this offer it is understood that your acceptance shall be subject to the approval of the United States Circuit Court for the District of Delaware.

Yours very truly, C. S. Hinchman."

On the same day the receiver accepted the offer by writing beneath the same as follows:

"To Charles S. Hinchman, Esq.
    I hereby accept the above offer. G. W. Pepper, Receiver.
    November 13, 1907."

This court duly approved this acceptance December 27, 1907, and discharged Pepper as receiver August 1, 1908, before Hinchman had paid the consideration for the assignment to him of the decree against Addicks. The court, however, carefully avoided taking any action which might terminate or injuriously affect any rights or obligations as between Hinchman and the gas company; for in the decree of discharge the receiver was directed, not only to assign and mark to the use of the gas company the decree which he, as its representative, had obtained June 14, 1907, but also to assign to it all his right, title and interest in his contract with Hinchman bearing date November 13, 1907, and approved December 27, 1907, for the assignment to him of the above mentioned decree and of all other claims against Addicks; the learned judge who signed the decree discharging the receiver evidently treating the day of judicial approval of the last mentioned contract as the proper contractual date. Pursuant to the decree of August 1, 1908, the receiver on or about August 5, 1908, assigned to and marked to the use of the gas company the decree of June 14, 1907, and assigned to it all his right, title and interest in and under his contract with Hinchman for the assignment of such decree, but did not assign or transfer to the gas company the assignment executed to the receiver as collateral security as above mentioned by the copper company of its rights under the contract with Elliot. This collateral assignment was withheld by the receiver owing to some doubt he had as to its proper disposition. The gas company October 6, 1908, for the consideration of $100,000, together with legal interest thereon from June 15, 1908, the date on or before which Hinchman was to

make payment under his contract with the receiver, assigned to Hinchman that decree and all its rights thereunder and all its claims against Addicks. The assignment from the copper company to the receiver of its interest in the contract with Elliot as collateral security for the payment of that decree was in the possession of the receiver at the time of the assignment of the decree to Hinchman, who filed in this court May 2, 1910, his petition setting forth, among other things, that in November, 1909, he learned of the assignment from the copper company to the receiver of its rights under the contract with Elliot as collateral security as above stated; that he had made demand upon the receiver to assign to him such collateral security; and that the receiver had declined and refused to do so; and praying for an order directing the receiver to assign and transfer the same to him. On the same day the receiver or late receiver filed his answer to the above petition, in which, after giving certain reasons why he did not transfer to the gas company the assignment to him by the copper company of its rights under the contract with Elliot, he stated:

"The said assignment is in my hands as a stakeholder for delivery to Addicks, or to said Bay State Gas Company, or to the said Hinchman, in case the Court shall be of opinion that he is entitled thereto, and I submit myself to your Honorable Court in the premises."

This court, on the same day, viewing Hinchman's petition as in substance a bill of interpleader, and having grave doubt as to its jurisdictional power by reason of the citizenship of the parties to entertain the proceeding, took no action upon the petition; but on the statement, contained in the answer and made orally in open court by the receiver and his counsel, that he still had in his possession the assignment from the copper company to him by way of collateral security for the payment of the decree of June 14, 1907, and recognizing that the receiver had acquired its possession solely in his representative capacity as an officer of this court and receiver of the gas company, and had been discharged from his receivership with respect to all other matters, made an order authorizing and directing him to assign and transfer the assignment to him from the copper company to the clerk of this court, to be disposed of pursuant to further order or decree, after due notice to all persons claiming an interest therein as should thereafter be directed by the court. In obedience to the above order the receiver, May 9, 1910, assigned and transferred the collateral assignment to the clerk and on the same day an order was made directing notice to be given to all such persons to file proofs of their claims on or before May 23, 1910. Notice having been given as directed Hinchman and the copper company filed their verified claims respectively. Addicks has neither made claim nor appeared. The only claimants are Hinchman on the one hand and the copper company on the other. Their claims were referred June 27, 1910, to a special examiner, with authority to take and report evidence in their support. The evidence duly taken and returned consists of sundry exhibits and the testimony of Hinchman. No other witness was produced. Counsel on both sides have in their briefs of argument assumed that Hinchman did not learn of the existence of the assignment executed by the copper company to the receiver as col-

lateral security until long after he, Hinchman, became the assignee of the decree against Addicks. But the evidence does not clearly disclose the date when Hinchman first learned of the existence of such collateral assignment, or whether he first acquired that knowledge before or only after the assignment, October 6, 1908, by the gas company to him of the decree against Addicks. There is nothing in the evidence, however, to show that Hinchman by any act or contract on his part either expressly or impliedly released or relinquished any right which might be acquired to such collateral security in equity or at law through the purchase by and assignment to him of that decree, or that he ever had such intention. There can be no question as to the purpose for which the collateral assignment was executed. Whatever negotiations may have transpired between the receiver and the copper company or Addicks with respect to the satisfaction of the decree through the giving of $250,000 in indorsed paper, there is no evidence that Hinchman took part in or was cognizant of them. The evidence is to the contrary. And that the interest of the copper company was assigned to the receiver solely as collateral security for the payment of the decree against Addicks is accentuated by the fact that from the original draft of the collateral assignment the words and figures "compromise sum of Two Hundred and Fifty Thousand Dollars in a note at twelve months from September 1, 1907" were stricken out, and before execution the words and figures "decree of about $1,400,000 held by the said Receiver against the said Addicks" inserted in lieu thereof. When Hinchman became the purchaser and assignee of the decree against Addicks on the payment of $100,000 and interest, as above mentioned, he became and has ever since continued to be entitled to the collateral security for the payment of that decree. It is a general rule that, in the absence of an agreement to the contrary, the assignee for value of a note, bill, judgment, decree or other evidence of indebtedness, for the payment of which the assignor holds collateral security, is in equity entitled, by virtue of the assignment to him of the principal obligation or evidence of indebtedness, to the collateral as such, although not named in the instrument of assignment, and regardless of his knowledge or lack of knowledge of the existence of such collateral. Daniel on Neg. Instr. § 748; Colebrooke on Col. Sec. § 79; Jones on Pl. and Col. Sec. § 418; Bispham's Eq. § 337; Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313; Batesville Institute v. Kauffman, 18 Wall. 151, 21 L. Ed. 775; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Esty v. Graham, 46 N. H. 169; Cutting v. Whittemore, 72 N. H. 107, 54 Atl. 1098; Hawkins, Receiver, v. Fourth Nat'l Bank, 150 Ind. 117, 49 N. E. 957; Perry v. Parrott, 135 Cal. 238, 67 Pac. 144; Painter v. Harding, 3 Phila. (Pa.) 449; Gay v. Hudson River Electric Power Co. (C. C.) 180 Fed. 222. Daniel in § 748 says:

"The assignment of any particular claim is considered an equitable assignment of all securities held by the assignor to assure it. Thus the assignment of a debt by whatever form of transfer, carries with it any bill or note by which it is secured; and the converse of the proposition is equally true, that the transfer by indorsement or assignment of a bill or note carries with it all securities for its payment, whether a mortgage or otherwise."

Colebrooke in § 79 says:

"The securities pledged for a debt follow it, in equity, no matter how the debt be modified, or into whose hands it may come. Until the debt is paid, the pledge accompanies it, and remains for its repayment, and is available to all who may acquire title thereto."

Jones in § 418 says:

"As the security, however, is a mere incident of the principal debt, just as a mortgage is a mere incident of the debt secured, an assignment of the debt passes either a legal or equitable interest in the pledge, unless it is otherwise agreed between the parties."

In Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313, the court said with respect to a note secured by a mortgage:

"The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."

And so with respect to a note secured by a trust deed the court in National Bank v. Matthews, 98 U. S. 621, 625, 25 L. Ed. 188, said:

"The deed, as a mortgage would have been, was an incident to the note and a right to the benefit of the deed, whether mentioned or delivered or not, when the note was assigned would have passed with the note to the transferee of the latter."

The counsel for the copper company claims that Hinchman "invokes the doctrine of subrogation," and necessarily unsuccessfully, for the reason, among others, that he was neither surety for Addicks nor under any compulsion or obligation to purchase the decree against him, but was a mere volunteer and stranger in the matter. It is true that the doctrine of subrogation in its strict and original sense is not applicable in Hinchman's case. In Prairie State Bank v. United States, 164 U. S. 227, 231, 17 Sup. Ct. 142, 144 (41 L. Ed. 412) the court speaking of subrogation said:

"That doctrine is derived from the civil law, and its requirements are, as stated in Ætna Life Insurance Company v. Middleport, 124 U. S. 534 [8 Sup. Ct. 625, 31 L. Ed. 537]: '1, that the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights; and, 2, that in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another.'"

But Hinchman does not invoke that doctrine as above defined. He sets up an equitable right as purchaser and assignee of the decree against Addicks to the benefit of the collateral assignment, that right being incidental to and growing out of the assignment of that decree to him by the gas company. His claim is not based upon payment and extinguishment of the debt against Addicks as evidenced by that decree, but upon its continued existence and ownership by him, Hinchman, under and by virtue of its express assignment to him. His right to the collateral assignment whether it be termed subrogation or not seems indisputable. Bispham in his Principles of Equity, § 337, says:

"A mere stranger who pays the debt cannot claim to be subrogated; but if such payment is in fact a purchase of the debt, and is intended to operate

as such, the assignee will acquire as an incident to his purchase the right of subrogation."

While the cases cited on the part of the copper company correctly treat the subject of subrogation they have no pertinency here.

The circumstances that the receiver did not transfer to the gas company the collateral assignment and that by direction of this court the same was transferred to the clerk can in no wise prejudice Hinchman. The receiver acquired and retained possession of the collateral assignment solely as officer of this court and representative of the gas company, and, having been in other respects discharged from the receivership, was required to transfer it to the clerk, another officer of this court, without prejudice to any one and to the end that the same might be disposed of in accordance with right and equity.

It is contended on the part of the copper company that it does not sufficiently appear that it conveyed to Elliot the mines and mining properties mentioned in the contract of September 15, 1906, between it and him, and that, therefore, it cannot be held that the company had acquired from him any right to royalties or profits as referred to in the collateral assignment in question, and the same must be treated as a nullity. To this contention there are two answers. First, the copper company having in due form and under its seal executed and delivered to the receiver the collateral assignment cannot now be heard to allege that it contained an incorrect statement of vital facts and was wholly without effect. Second, this is not the proper occasion nor is the present the right time for an inquiry into the validity or invalidity, or effect or want of effect, of the collateral assignment. It was executed by the copper company and it was taken by the receiver for what it was worth. And whether it be worth much, little or nothing are questions which can properly arise only when Hinchman or his assignee shall proceed to realize upon it.

For the foregoing reasons a decree must be made in favor of Hinchman, directing the clerk to assign and transfer to him the collateral assignment as security for payment of the decree.