IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2014 Session

## AURORA LOAN SERVICES, LLC v. YVETTE D. WOODY, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT00175412, CT0439313     Donna M. Fields, Judge

No. W2014-00761-COA-R3-CV - Filed December 30, 2014

In this detainer action, the trial court granted summary judgment in favor of the loan servicing company. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and ROGER A. PAGE, SP. J. joined.

Robert L.J. Spence, Jr. and Bryan M. Meredith, Memphis, Tennessee, for the appellants, Yvette D. Woody and Simon D. Woody, Jr.

Lawrence W. Kelly, Atlanta, Georgia, for the appellee, Aurora Loan Services, LLC.

## OPINION

## Background

This case concerns an unlawful detainer action filed by Plaintiff/Appellee Aurora Loan Services, LLC ("Aurora"), against Defendants/Appellants Yvette D. Woody and Simon D. Woody, Jr. (together, "Appellants") regarding real property located in Collierville, Tennessee. On November 22, 2006, Appellants executed a Promissory Note ("Promissory Note") in favor of First Magnus Financial Corp. ("First Magnus") in the amount of $1,225,000.00 for the purchase of the real property at issue. The Promissory Note specifically states that: "Lender may transfer this [Promissory] Note. Lender or anyone who takes this

[Promissory] Note by transfer and who is entitled to receive payments under this [Promissory] Note is called the 'Note Holder'." Further, the Promissory Note provides that the borrowers waive their right to presentment under the Promissory Note.

On the same day, the Appellants also signed a Deed of Trust conveying a security interest in the property to First Magnus. The Deed of Trust states that Mortgage Electronic Registration Systems ("MERS") would serve as a nominee and beneficiary and that Mary Allisandratos would serve as Trustee. However, the Deed of Trust also states that the lender may appoint a Substitute Trustee, which is to be recorded by instrument in the county in which the Deed of Trust is recorded. Further, the Deed of Trust states that the Appellants will immediately surrender possession of the property in the event of a foreclosure sale.

At some point, Aurora asserts that the Promissory Note was indorsed[1] from First Magnus to Residential Funding Company, LLC, then to Deutsche Bank Trust Company Americas ("Deutsche Bank"). Around April 1, 2008, Aurora alleges that it was transferred the original Promissory Note and Deed of Trust by Wells Fargo, the custodian of the collateral file, on behalf of Deutsche Bank, for the purpose of servicing the loan. According to Aurora, it remained in possession of the original Promissory Note and Deed of Trust until Aurora "released the documents on July 2, 2012, when servicing of the loan was transferred to Nationstar Mortgage."

On November 18, 2011, the beneficiary under the Deed of Trust, MERS, assigned its interest to Aurora. The instrument of assignment was recorded at Instrument No. 1120766 in the Shelby County Register's Office on December 7, 2011. Prior to the recording of the assignment, however, on May 31, 2010, Aurora executed an appointment of Substitute Trustee naming Nationwide Trustee Services ("Nationwide") as Substitute Trustee of the Appellants' Deed of Trust. The appointment was recorded with the Shelby County Register of Deeds on July 7, 2010. On or around November 29, 2011, Aurora reappointed Nationwide as Substitute Trustee of the Appellants' Deed of Trust. The appointment was again recorded with the Shelby County Register of Deeds on December 7, 2011. The Appointment contained the statement that:

> [T]he undersigned beneficiary has appointed the substitute
> trustee prior to the first notice of the publication as required by
> T.C.A. Section 35-5-101 and ratifies and confirms all actions

---

[1] *Black's Law Dictionary* defines "indorse" as "[t]o sign (a negotiable instrument), . . . to either accept responsibility for paying an obligation memorialized by the instrument or to make the instrument payable to someone other than the payee." *Black's Law Dictionary* 843 (9th ed. 2009). This case involves the latter of the two situations.

taken by the substitute trustee subsequent to said date of substitution and prior to the recording of this substitution.

The reappointment stated that it became effective on August 11, 2011.

The Appellants defaulted on the Promissory Note. Accordingly, Nationwide, as Substitute Trustee, advertised the property for auction on November 10, 17, and 24, 2011 in a daily newspaper. Nationwide sold the property at public auction on January 5, 2012. Aurora purchased the property. The sale is evidenced by a Substitute Trustee's Deed recorded in the Shelby County Register's office.

After the sale, on January 20, 2012, Aurora filed an unlawful detainer action against the Appellants for possession of the property in the Shelby County General Sessions Court. The General Sessions Court entered judgment in favor of Aurora on April 4, 2012. The Appellants filed a timely notice of appeal to the Shelby County Circuit Court. While the case was pending, the Appellants filed a separate case in a different division of Shelby County Circuit Court for a Declaratory Judgment and Permanent Injunction. The two cases, the declaratory judgment action and the detainer action, were later consolidated.

Aurora filed a motion for summary judgment in the detainer action on May 8, 2012, along with a Statement of Undisputed Material Facts. The Statement of Undisputed Facts disclosed the assignment of interest in the Deed of Trust, but did not discuss the alleged transfer of the Promissory Note and Deed of Trust file to Aurora from Wells Fargo.

Appellants filed a response in opposition to the motion for summary judgment. Appellants argued that the assignment of the Deed of Trust was a nullity if there was no proof that the Promissory Note was also assigned to Aurora. According to Appellants, Aurora "must prove ownership by presenting the original Promissory Note and Deed of Trust dated November 22, 2006 as evidence that both recorded documents were acquired simultaneously on November 18, 2011 in its assignment, if valid, from MERS, which [Aurora] has failed to do." Further, Appellants asserted that "[t]here is no evidence that [Aurora] . . . is now or ever was in physical possession of Defendants' recorded Promissory Note and Deed of Trust on November 18, 2011, the date of [Aurora's] assignment, if valid, from MERS."

Aurora filed a reply to Appellants' response on July 5, 2012, arguing that the Appellants' argument was barred by the doctrine of *res judicata*. According to Aurora, Appellants' arguments had previously been raised and adjudicated in a separate lawsuit in Shelby County Circuit Court. Thus, Aurora argued that Appellants were precluded from re-litigating this issue. Further, Aurora argued that Appellants failed to comply with the

requirements of Rule 56.06[2] of the Tennessee Rules of Civil Procedure, in that they failed to set forth specific facts showing a genuine issue for trial.

On July 12, 2012, Appellants filed a supplemental response to Aurora's motion for summary judgment. Appellants argued that *res judicata* did not apply because the other Shelby County Circuit Court case was still pending. Further, Appellants argued that the issue of ownership of the Promissory Note was at issue in the case, and that Appellants had a right to question Aurora's purported interest. The Appellants also submitted the affidavit of Jeffrey Olson, which asserted that the Promissory Note and Deed of Trust had been sold to another party in 2007, and never assigned to Aurora. According to his affidavit, Mr. Olson is a certified Forensic and Securitization Residential and Commercial Loan Auditor in the State of Illinois. Mr. Olson's affidavit was accompanied by several public records purporting to support Mr. Olson's assertions. Because Appellants asserted that Aurora had no ownership interest in the Promissory Note, Appellants argued that Aurora lacked standing to prosecute the unlawful detainer action. Finally, the Appellants filed a response to Aurora's Statement of Undisputed Facts, denying the material allegations contained therein, and pointing to Mr. Olson's affidavit.

A hearing on Aurora's motion for summary judgment was scheduled for June 2012. On July 13, 2012, the trial court entered an order continuing the hearing on the motion for summary judgment, but requiring Appellants to pay $300.00 in legal fees to Aurora in connection with the Appellants' failure to attend the scheduled hearing. A second hearing on the summary judgment motion was held on July 13, 2012; however, the hearing was not concluded. Instead, the trial court ordered the hearing continued to allow the parties to file supplemental responses. The trial court further ordered that the Appellants would be required to post a bond in the amount of $65,715.00 pursuant to Tennessee Code Annotated Section 29-18-130(b)(2). On August 10, 2012, the Appellants filed a notice that they had deposited the required cash bond with the Circuit Court Clerk.

On May 16, 2013, Appellants filed their own motion for summary judgment, seeking a declaration that the foreclosure was a nullity because Aurora did not have the right to

_____

[2] Rule 56.06 states, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

foreclose on the property. In support of its motion, Appellants included a Statement of Undisputed Facts, all of which were supported by the affidavit of Mr. Olson. On the same day, Appellants propounded written discovery and requests for production of documents to Aurora concerning Aurora's possession and ownership interest in the Promissory Note.

Aurora responded to Appellants' discovery requests on August 7, 2013. Specifically at issue was Interrogatory No. 4: "Identify the date(s) that [Aurora] purchased the debt, the Deed of Trust, and Promissory Note at issue in this proceeding." Aurora responded that: "Aurora became the servicer of the loan on or about April 1, 2008. The Promissory Note was indorsed from First Magnus Financial Corporation to Residential Funding Company, LLC and then from Residential Funding Company, LLC to Deutsche Bank Trust Company Americas as Trustee." When asked to "[i]dentify by date transferor, and transferee any and all transfers of the [P]romissory Note at issue in this proceeding," Aurora cited its above response. In addition, Appellants requested that Aurora produce "the original Promissory Note and Deed of Trust at issue in this proceeding." Aurora responded that: "The original [P]romissory Note and Deed of Trust are in the collateral file which is now in the possession of the current servicer, Nationstar Mortgage." Although Aurora asserted that copies of the Promissory Note and Deed of Trust were attached to their response, it does not appear that the attached Promissory Note is included in the record.[3,4]

On November 18, 2013, Aurora responded in opposition to Appellants' motion for summary judgment, again arguing that Appellants' claim was barred by *res judicata*, that Appellants' motion did not comply with Rule 56.03 of the Tennessee Rules of Civil Procedure because Mr. Olson was not competent to testify as to those matters, and that Appellants had no standing to raise arguments regarding the securitization of loans. Aurora also filed a response to Appellants' Statement of Undisputed Facts, arguing that Mr. Olson's affidavit should be struck, and any facts relying on the affidavit not considered by the court. To that end, Aurora also filed a motion to strike the affidavit of Mr. Olson.

---

[3]The record does include a copy of the Deed of Trust that was attached to Aurora's motion for summary judgment. In addition, the record on appeal does include two copies of the Promissory Note: one filed as an attachment to Mr. Olson's affidavit; and one filed by Appellants in their separate lawsuit that was later consolidated with this case. The copy contains a notation that it is a true and correct copy of the Promissory Note. This copy of the Promissory Note, however, does not contain the indorsements that Aurora alleges to have occurred.

[4]Aurora's response to Appellants' request for production of documents indicates that it produced over 200 documents responsive to Appellants' requests, including a copy of the Promissory Note and Deed of Trust. It is the Appellants' duty to prepare a record that contains all necessary documents, while excluding those documents that are superfluous, unnecessary, or duplicative. *See* Tenn. R. App. P. 24(a). Accordingly, we must attribute the failure to include the Promissory Note containing the indorsement to Deutsche Bank in the record to Appellants.

On November 25, 2013, Aurora filed a motion to release the bond held by the Circuit Court clerk "[p]resupposing a favorable ruling" on Aurora's motion for summary judgment. On December 2, 2013, Appellants filed a Second Supplemental Memorandum in opposition to Aurora's motion for summary judgment. In their Memorandum, Appellants argued that the Substitute Trustee that conducted the foreclosure sale was not properly appointed because: 1) Aurora had no ownership interest in the Promissory Note and, therefore, no right to appoint a Substitute Trustee; and 2) the purported appointment of Nationwide as the Substitute Trustee did not occur prior to Nationwide initiating foreclosure proceedings. On December 3, 2013, Appellants also responded in opposition to Aurora's motion to strike the affidavit of Mr. Olson.

On January 10, 2014, the Appellants' Declaratory Judgment Action was transferred to Division VII and consolidated by agreement with the detainer action. Also on January 10, 2014, Aurora filed the affidavit of Laura McCann, Vice President of Aurora, and a custodian of its records. Ms. McCann's affidavit stated, in pertinent part:

3.
Aurora maintained, and continues to maintain, the [Appellants'] loan records at the office where I am employed.

\* \* \*

7.
On or about April 1, 2008, Aurora became servicer of the [Appellants'] loan.

8.
On May 31, 2010, Angela Martinez, Asst. Vice President, Aurora Loan Services, LLC, executed an Appointment of Substitute Trustee ("Appointment") naming Nationwide . . . as the Substitute Trustee of the [Appellants'] Deed of Trust. The Appointment was recorded in the Register of Deeds Office of Shelby County, Tennessee . . . on July 2, 2010. Aurora was the holder of the [Appellants' Promissory] Note.

9.
Aurora remained in possession of the original [Promissory] Note and Deed of Trust of the [Appellants'] until they released the documents on July 2, 2012, when servicing of the loan was transferred to Nationstar Mortgage.

Hearing on the summary judgment motion was again continued. On February 20, 2014, Aurora filed a supplemental response to the Appellant's written discovery requests. In its response, Aurora included a "collateral file history" of the Appellants' loan. The first entry in the collateral file history is on April 2008, and indicates the location history for that date as Wells Fargo, the custodian of the file.[5] In addition, Aurora supplemented its prior interrogatory responses. Specifically at issue, with regard to the question: "Identify the date(s) that [Aurora] purchased the debt, the Deed of Trust, and Promissory Note at issue in this proceeding[,]" Aurora responded that:

> Aurora did not purchase the debt at any time. Aurora became the servicer of the loan on behalf of Deutsche Bank Trust Company Americas, as Trustee, on or about April 1, 2008. The [Promissory] Note was indorsed from First Magnus Financial Corporation to Residential Funding Company, LLC to Deutsche Bank Trust Company Americas as Trustee. The indorsements are not dated.

With regard to the request to "[i]dentify by date transferor, and transferee any and all transfers of the [P]romissory Note at issue in this proceeding," Aurora cited its above response, and further stated:

> The original [Promissory] Note and Deed of Trust were transferred by Wells Fargo, as the custodian of the collateral file, on behalf of Deutsche Bank. Aurora remained in possession of the original [Promissory] Note and Deed of Trust until they released the documents on July 2, 2012, when servicing of the loan was transferred to Nationstar Mortgage.

The supplemental responses were sworn to be true and correct.

The parties' competing motions for summary judgment, the motion to strike the affidavit of Mr. Olson, and the motion to release funds were finally heard on February 18, 2014. On March 26, 2014, the trial court entered a detailed and thorough written order granting Aurora's motions to strike, for summary judgment, and to release funds. Although the trial court acknowledged that Aurora had raised an argument based on *res judicata*, the trial court ruled that it would grant Aurora's motion on other grounds, thereby pretermitting

---

[5] The copy of the collateral file history contained in the record is a "screen shot" type of copy that is very small. Accordingly, it is very difficult to discern much of the information contained on the document.

the *res judicata* argument. Further, the trial court partially granted the motion to strike the affidavit of Mr. Olson on the basis of Mr. Olson's lack of expertise; specifically, the trial court stated that it would not consider Mr. Olson's affidavit, but would consider the documents attached to the affidavit, as those documents constituted public records. With regard to the other issues raised, the trial court stated:

> [Appellants'] primary contentions are that (1) [Aurora] did not have standing to foreclose on the Property as it was not the holder of the Promissory Note or any other legal interest that would entitle it to foreclose, and/or (2) the advertisement of the foreclosure sale did not occur in strict compliance with the terms of the Deed of Trust. With respect to the advertisement of the sale, [Appellants] specifically contend that [Aurora] had not been assigned the Deed of Trust prior to [Aurora]'s initial appointment of Nationwide Trustee Services, Inc. on May 31, 2010 and Nationwide Trustee Services, Inc. had not been appointed as Substitute Trustee prior to the time it advertised the sale of the Property in THE DAILY NEWS on November 10, 17, and 24, 2011. [Appellants] contend that, if [Aurora] did not comply with the terms of the Deed of Trust, the foreclosure sale is void and [Aurora] does not have a right to possession of the property.

> \* \* \*

> The Court finds that there are no genuine issues of material fact. The Court makes the following conclusions of law: Aurora qualifies as a transferee of the [Promissory] Note in accordance with the provisions of T.C.A. 47-3-203(b) and the case law interpreting that statute and therefore has the right to enforce the [Promissory] Note and Deed of Trust. Aurora also qualifies to enforce the terms of the Deed of Trust by virtue of the assignment of the Deed of Trust from MERS to Aurora.

> Aurora therefore properly appointed Nationwide Trustee as Substitute Trustee under the terms of the [Promissory] Note, Deed of Trust and T.C.A. 35-5-114(b). T.C.A. 35-5-114 (b) (3) (B) provides that "Once a substitution of trustee instrument containing the statement set forth in subdivision (b) (3) (A) is timely recorded, it shall act as conclusive proof as a matter of law that the substitute trustee has been timely appointed and has

acted with authority of the beneficiary."

[Appellants] argued that the record before the Court did not adequately demonstrate that Aurora had the authority to appoint a substitute trustee at the time of each of the two appointments made in this case. By the findings of fact and conclusion of law discussed above, the Court does not agree and finds adverse to [Appellants].

Since the Court finds that the foreclosure sale of January 5, 2012 was conducted in accordance with the terms of the Deed of Trust and Tennessee law, Aurora, the purchaser of the property at the foreclosure sale is entitled to possession of the property.

Consistent with the findings and conclusions above the Court grants the summary judgment motion of [Aurora] and denies the summary judgment motion of [Appellants].

The trial court's decision to grant summary judgment to Aurora concluded both the detainer action and the declaratory judgment action. The trial court also granted Aurora's motion to release the funds held by the Circuit Court Clerk, but issued a stay on that release pending appeal, provided that Appellants pay into the Circuit Court Clerk the fair rental value of the property for every month while the appeal is pending. Appellants filed a timely notice of appeal.

## Issues Presented

Appellants raise three issues for review, which are taken, and slightly restated, from their appellate brief:

1.  Whether the trial court erred in granting Aurora's motion for summary judgment and denying Appellants' motion for summary judgment where the foreclosure sale did not strictly comply with the Deed of Trust executed by the Appellants.

2.  Whether the trial court erred in granting Aurora's motion for summary judgment and denying Appellants' motion for summary judgment where Aurora lacked authority to enforce the Promissory Note executed by Appellants.

3.  If this Court reversed the trial court's rulings on the

parties' motion for summary judgment, the trial court's ruling releasing the bond posted by Appellants' to stay the issuance of a writ of possession should also be reversed.

As we perceive it, Appellants raise two issues:

1.  Whether the trial court erred in granting summary judgment to Aurora and denying summary judgment to Appellants?
2.  Whether the trial court erred in releasing the bond posted by Appellants based upon the trial court's ruling on the competing summary judgment motions.

Accordingly, both issues turn on whether the trial court correctly ruled on the parties' summary judgment motions.

## Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party bearing the burden at trial is the moving party, the moving party may shift the burden "by alleging undisputed facts that show the existence of [an] element [of his or her claim] that entitle the plaintiff to summary judgment as a matter of law." ***Self Help Ventures Fund v. Robilio***, No. W2009-00368-COA-R3-CV, 2010 WL 2176093, at * 4 (Tenn. Ct. App. June 1, 2010)*, perm. app. denied* (Tenn. Jan 13, 2011). If this initial burden of production is not satisfied, the motion for summary judgment should be dismissed. However, if the moving party meets its initial burden, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. ***Id.***

## Analysis
### Transfer of Promissory Note to Aurora

Appellants first argue that the trial court erred in granting summary judgment to Aurora because material factual disputes exist as to whether Aurora was entitled to enforce the Promissory Note at issue. The dispositive issue is whether the undisputed facts establish, as a matter of law, that Aurora was a transferee of the Promissory Note. Aurora asserts that the undisputed facts of this case establish that it was a transferee of the Promissory Note, with the right to enforce it, pursuant to Tennessee Code Annotated Section 47-3-203. Section 47-3-203 states, in pertinent part:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

As an initial matter, we note that there is no dispute in this case that First Magnus, as the original holder of the Promissory Note, was entitled to transfer the Promissory Note pursuant to the plain language of the contract. To support its argument that it should be considered a proper transferee pursuant to Tennessee Code Annotated Section 47-3-203, Aurora relies on the affidavit of Ms. McCann, the document concerning the Appellant's collateral file history, and Aurora's supplemental responses to Appellants' written discovery requests. Accordingly, we must consider these documents to determine whether Aurora properly shifted the burden to Appellants for summary judgment purposes.

From our review of the record, Ms. McCann's sworn affidavit states that Aurora became entitled to enforce the loan on April 1, 2008 and that Aurora had physical possession of the Promissory Note and the Deed of Trust at that time. Further, Ms. McCann stated that Aurora was the "holder" of the Promissory Note at this time. In addition, Aurora submitted both sworn statements and documentary evidence indicating that the collateral file containing the Promissory Note and Deed of Trust were delivered to Aurora for enforcement on April 1, 2008, by Wells Fargo, as the custodian of the records. Aurora's sworn supplemental response to Appellants' interrogatories further indicate that Wells Fargo transferred the collateral file on behalf of Deutsche Bank, who had been properly indorsed as holder of the Promissory Note. Accordingly, the sworn evidence in the record indicates that, as of April 1, 2008, Aurora was delivered physical possession of both the Promissory Note and the Deed

of Trust from Deutsche Bank, which had the right to enforce the Promissory Note by virtue of its indorsement. From then on, Aurora began servicing the Promissory Note. Pursuant to Tennessee Code Annotated Section 47-3-203, delivery of an instrument by a person other than its issuer for the purpose of giving the recipient the right to enforce the instrument is sufficient to qualify the recipient as a transferee vested with the right to enforce the instrument. According to Aurora's sworn statements, as of April 2008, Aurora was delivered both the Promissory Note and the Deed of Trust and began servicing the Promissory Note. Nothing in the record indicates that First Magnus, Deutsche Bank, Wells Fargo, or MERS ever objected to Aurora's actions in servicing the loan for the nearly four years between the delivery and the foreclosure. Based on the foregoing, we conclude that Aurora met its burden to allege facts that, if undisputed, indicate that Aurora should be considered a transferee pursuant to Tennessee Code Annotated Section 47-3-203. Accordingly, we turn to consider whether Appellants met their burden to establish a genuine dispute of material facts regarding this issue. We conclude that they have not.

First, we note that Appellants' response to Aurora's Statement of Undisputed Fact relied entirely on the affidavit of Mr. Olson. However, Mr. Olson's affidavit was struck by the trial court for failure to comply with ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (outlining the factors to consider in determining whether an expert is qualified to testify). Appellants do not raise the trial court's ruling striking the affidavit as an issue on appeal. As such, Aurora argues that this Court should affirm summary judgment simply on the basis of the Appellants' failure to comply with Rule 56.03 of the Tennessee Rules of Civil Procedure.

Rule 56.03 of the Tennessee Rules of Civil Procedure provides:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.
>
> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or

(iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried . . . .

Based on the plain language of Rule 56.03:

Courts consistently have emphasized that a party opposing a motion for summary judgment may not simply rest on its pleadings, but must affirmatively oppose the motion. . . . Such opposition may be made by pointing to the evidence in the record which indicates disputed material facts. . . . Rule 56.03 requires that a party opposing a motion for summary judgment must serve and file a response to the motion.

*Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (internal citations omitted) (citing *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

Generally, "when a non-moving party fails to respond to the moving party's statement of undisputed facts, the court may consider the facts admitted." *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 539 (Tenn. Ct. App. 2012) (citing *Holland*, 125 S.W.3d at 428–29 ("Thus the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party.")); *see also Waters v. Tenn. Dep't of Corr.*, No. M2002-00917-COA-R3-CV, 2003 WL 21713421, at *4 (Tenn. Ct. App. July 24, 2003) (holding that the "complete failure" to respond to a motion for summary judgment and statement of undisputed facts can amount to a conclusive admission that the facts contained in the statement are undisputed); *Simmons v. Harris*, No. M2000-00227-COA-R3-CV, 2000 WL 1586451, at *3 (Tenn. Ct. App. Oct. 25, 2000) (holding that as a consequence of non-moving party's failure to comply with Rule 56.03, the moving party's alleged facts were deemed admitted).

Appellants assert that Aurora's argument is waived by Aurora's failure to specifically raise this issue in the trial court. In contrast, Aurora argues that this Court should grant summary judgment solely on the basis of Appellants' alleged failure to comply with Rule

-13-

56.03. Respectfully, we are unconvinced by either argument. The trial court did not strike Mr. Olson's affidavit until the final order in the case. In addition, in Aurora's motion asking the trial court to strike the affidavit, Aurora argued that should Mr. Olson's affidavit be struck, summary judgment should be granted to Aurora on the basis that Appellants failed to meet their "burden of production . . . to show that a genuine issue of material fact exists." *Self Help Ventures*, 2010 WL 2176093, at *4. Thus, Aurora's argument was sufficiently raised in the trial court. In this case, however, the parties litigated the summary judgment motions for nearly two years. In addition, while Mr. Olson's affidavit was struck, the documents attached were not. Consequently, in this particular case, we decline to conclude that Appellants are not entitled to appellate review of the trial court's summary judgment decision. Accordingly, we proceed to consider whether anything in the record established a genuine issue of material facts.

Appellants first argue that the facts in the record, even if true, fail to show that Aurora was transferred the Promissory Note "for the purpose of giving to the person receiving delivery the right to enforce the instrument." Tenn. Code Ann. § 47-3-203. The comments to Tennessee Code Annotated Section 47-3-203 indicate that: "Although transfer of an instrument might mean in a particular case that title to the instrument passes to the transferee, that result does not follow in all cases. The right to enforce an instrument and ownership of the instrument are two different concepts." Accordingly, Appellants argue that evidence of transfer is insufficient to vest rights in the transferee without evidence to show that the purpose of the transfer was to give the transferee the right to enforce the instrument.

We recognize that there are no documents in the record from Deutsche Bank specifically stating that Aurora was transferred the Promissory Note for the purpose of giving Aurora the right to enforce the Promissory Note.[6] The question, then, is whether this

---

[6]Although there is nothing in the record to dispute Aurora's sworn statement that the Promissory Note was indorsed by Deutsche Bank, we note that there are also no documents in the record to support this fact other than Aurora's sworn statements. After a careful review of Appellants' brief, however, Appellants do not argue that Deutsche Bank was not a holder entitled to enforce, and, therefore, transfer, the Promissory Note. Instead, Appellants argue that there is no evidence that Wells Fargo had the right to enforce the Promissory Note, and therefore, no proof that Aurora derived any rights from the transfer by Wells Fargo. This argument is without merit, however. Aurora's statement clearly indicates that Wells Fargo transferred the collateral file as a custodian for Deutsche Bank, the holder of the Promissory Note. *Black's Law Dictionary* defines "custodian" as merely "[a] person or institution that has charge or custody . . . of . . . property, papers, or other valuables." *Black's Law Dictionary* 441 (9th ed. 2009). Nothing in the record indicates that Wells Fargo was either a holder, transferee, or transferor of the Promissory Note. Instead, Aurora's statement indicates that the transferor in this case is Deutsche Bank. Because Appellants do not argue that Deutsche Bank was not a proper holder, entitled to enforce the Promissory Note, we must conclude that the facts in the record establish that Aurora received the right to enforce the Promissory Note when it was transferred to Aurora from Deutsche Bank.

deficiency is sufficient to create a "genuine issue as to any material fact" to defeat summary judgment. Tenn. R. Civ. P. 56.04. *Black's Law Dictionary* defines "genuine issue of material fact" as "a triable . . . or real question of fact supported by . . . evidence." *Black's Law Dictionary* 756 (9th ed. 2009); *see also* **McPherson v. Shea Ear Clinic**, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, at *8 (Tenn. Ct. App. April 27, 2007) (requiring a non-moving party to "demonstrate the existence of **triable** factual disputes" in order to survive summary judgment) (emphasis added) (quoting **Kenyon v. Handal**, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003)); **Rooker v. Rimer**, 776 S.W.2d 124, 128 (Tenn. Ct. App. 1989) (holding that a court may dispose of a case by summary judgment when there is "no **real** dispute") (emphasis added). Accordingly, we turn to the record to determine if there is a "a triable . . . or real question of fact" regarding the purpose of the transfer to Aurora. We conclude that there is not.

Ms. McCann's affidavit provides that Aurora was the "holder" of the Promissory Note as early as April 2008. There is no dispute that Aurora is not considered a "holder" under Tennessee law. *See* Tenn. Code Ann. § 47-3-201 (requiring a negotiation of the instrument in order to be qualified as a "holder"; defining negotiation as transfer and indorsement by the holder). This fact alone, however, does not prevent this Court from finding that Aurora was a transferee of the Promissory Note pursuant to Tennessee Code Annotated Section 47-3-203. Because Aurora does not dispute that it is not a holder of the Promissory Note pursuant to Tennessee Code Annotated Section 47-3-201, we look to other definitions of the word to determine Ms. McCann's meaning. First, we consider the language of the Promissory Note, which defines a holder as a "[l]ender or anyone who takes this [Promissory] Note by **transfer** and who is entitled to receive payments under this [Promissory] Note." (Emphasis added). Thus, the Promissory Note indicates that a party may be a holder when it has been transferred the Promissory Note and is, therefore, entitled to receive payments on it. *Black's Law Dictionary* likewise defines a holder as "[a] person [or entity] who has legal possession of a negotiable instrument and is entitled to receive payment on it." *Black's Law Dictionary* 800 (9th ed. 2009). These definitions track the description of a transferee pursuant to Tennessee Code Annotated Section 47-3-203, in that Aurora was both in possession of the instrument and entitled to enforce it. Thus, although Aurora was referred to in Ms. McCann's affidavit and in the Promissory Note itself as a "holder," the substance of the foregoing definitions convince us that Aurora was in fact asserting that it was a transferee under Tennessee law. *See* Tenn. Code Ann. § 47-3-203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . .").

Taking all the facts in the record together, we conclude that there is no genuine dispute that Aurora is the party entitled to enforce the Promissory Note. Other facts support Ms. McCann's assertion that Aurora was the transferee of the Promissory Note. According

to Ms. McCann's affidavit, Aurora began servicing the loan in 2008 after Aurora obtained possession of the collateral file. In addition, Aurora was not only transferred the Promissory Note, but was also later assigned the Deed of Trust by MERS, the lender's beneficiary under the Deed of Trust. The assignment of the Deed of Trust was properly recorded and is included in the record. Further, nothing in the record indicates that any other person or entity attempted to enforce the Promissory Note from 2008 until this case was decided by the trial court in 2014. Finally, nothing properly submitted by the Appellants in response to Aurora's motion for summary judgment contradicts the sworn statements and documents submitted by Aurora showing that it is a transferee of the Promissory Note. Accordingly, there is no "real question supported by . . . evidence" that Aurora was delivered the Promissory Note for the purpose of enforcing it. *See Black's Law Dictionary* 756 (9th ed. 2009).

Other courts have concluded that similar facts were sufficient to establish a transfer pursuant to Tennessee Code Annotated Section 47-3-203. For example, in ***Donaldson v. BAC Home Loans Servicing, L.P.***, 813 F.Supp.2d 885 (M.D. Tenn. 2011), the Federal District Court for the Middle District of Tennessee held that a loan servicing company should be considered a transferee, with rights to enforce the instrument, pursuant to Tennessee Code Annotated Section 47-3-203. In ***Donaldson***, the plaintiff property owner defaulted on a mortgage serviced by the defendant loan servicing company. ***Id.*** at 888. After plaintiff defaulted, the defendant loan servicing company alleged that it produced the original collateral file to the plaintiff. Plaintiff disputed that she was ever shown an original copy of the promissory note. Plaintiff subsequently filed a complaint against the loan servicing company for breach of contract, violations of federal statutes, and fraud. ***Id.*** at 888–89. The case was subsequently removed to federal court. The loan servicing company filed a motion for summary judgment, memorandum, and Statement of Undisputed Facts. ***Id.*** at 889. The plaintiff responded in opposition, arguing, *inter alia*, that the loan servicing company was not entitled to enforce the promissory note.

The district court disagreed, and held that, pursuant to Tennessee law, the loan servicing company was a proper transferee pursuant to Tennessee Code Annotated Section 47-3-203. ***Donaldson***, 813 F.Supp.2d at 895–96. The district court held that regardless of the fact that the promissory note was not indorsed by the loan servicing company, the loan servicing company could still be considered a transferee with entitlement to enforce the promissory note if it there was a valid transfer of the instrument to the loan servicing company. ***Id.*** From our reading of the opinion, there was no document in the record from the original holder of the loan expressly stating that the transfer was for the purpose of giving the loan servicing company the right to enforce the loan. Instead, that conclusion was drawn from the attendant circumstances. Because the sworn statements and documents in the record established a valid transfer, the district court held that the loan servicing company submitted sufficient evidence to obtain summary judgment on its entitlement to enforce the promissory

note. Finally, the court held that the loan servicing company's failure to produce the original promissory note did not create a dispute of material fact sufficient to defeat summary judgment. *Id.* at 896. Thus, even without an express document in the record stating that the purpose of the transfer to the loan servicing company was for the purpose of enforcing the promissory note, the district court concluded that there could be no genuine dispute as to this issue based on the facts surrounding the transfer and the loan servicing company's actions thereafter.

The district court's interpretation of Tennessee Code Annotated Section 47-3-203 is consistent with this Court's own interpretation of the statutory scheme. In *Anderson v. Nelson*, No. 02A01-9406-CV-00146, 1995 WL 495924 (Tenn. Ct. App. Aug. 21, 1995), this Court held that a loan servicer need not be a holder of a promissory note to be entitled to enforce it. *Id.* at *2 ("Therefore, a transferee, even though not a holder, is allowed to enforce an instrument if the transferor was a holder at the time of the transfer.") (citing *Piper v. Goodwin*, 20 F.3d 216 (6th Cir.1994)). Because the holder of the promissory note in *Anderson* had assigned it to the plaintiffs, the Court held that a transfer had occurred and the plaintiffs were entitled to enforce the promissory note. Likewise in this case, Appellants have submitted no evidence to dispute Aurora's sworn statement that Deutsche Bank, as the holder of the Promissory Note, transferred the Promissory Note, and the right to enforce it, to Aurora. Under these circumstances, Appellants have failed to establish a genuine issue of material fact to defeat Aurora's summary judgment motion.

Appellants next argue that Aurora's conflicting interrogatory responses create a genuine issue of material fact as to when and if a transfer of the Promissory Note ever occurred. "Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out." *Church v. Perales*, 39 S.W.3d 149, 169–70 (Tenn. Ct. App. 2000) (citing *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993)); *see also Helderman v. Smolin*, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005). "If determined by the trial court to be contradictory, the statements by the witness are considered to be 'no evidence' of the fact sought to be proved." *Helderman*, 179 S.W.3d at 501 (quoting *Wilson v. Patterson*, 73 S.W.3d 95, 103–04 (Tenn. Ct. App. 2001)). This Court recently explained the long-standing policy behind the cancellation rule, stating:

> If parties in court were permitted to assume inconsistent
> positions in the trial of their cause, the usefulness of courts of
> justice would in most cases be paralyzed. The coercive powers
> of the law, available only between those who consented to its
> exercise, could be set at naught by all. But the rights of all men
> are in the keeping of the courts, and consistency of proceeding
> is therefore required of all those who come in or are brought

before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose.

*Helderman*, 179 S.W.3d at 501–02 (quoting *Stamper v. Venable*, 117 Tenn. 557, 97 S.W. 812, 813 (Tenn. 1906)). The cancellation rule only applies, however, "when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence." *Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978). Tennessee Law of Evidence further explains the cancellation rule, stating:

> A number of Tennessee decisions adopt a rule that contradictory statements by a witness on the same fact cancel each other and therefore amount to no evidence of that fact. Although not technically a rule of evidence, this rule can have a significant impact on a case and merits attentions.
>
> * * *
>
> It should be noted that this rule is actually more narrow than it would appear to be. No sensible decision holds that a witness's testimony on a fact is automatically discounted simply because the witness contradicted himself or herself on that fact. Rather, the court assesses whether there is an explanation for the inconsistency and whether either version is corroborated by other evidence. The courts recognize that testimony may have value even though it has been both affirmed and denied if the contradiction is explained and shown to be the product of misunderstanding or inadvertence.
>
> * * *
>
> Corroboration of one version is also frequently found, thereby blocking the cancellation rule. Often it consists of the testimony of another witness.

Cohen, *et al.*, *Tennessee Law of Evidence* § 6.07[5] (footnotes omitted).

In this case, the allegedly contradictory statements consist of one interrogatory response by Aurora that did not mention the transfer of the collateral file to Aurora from Wells Fargo on behalf of Deutsche Bank, and one interrogatory response that did. Appellants argue that these statements, at the very least, create a dispute of material fact as to whether Aurora was actually transferred the collateral file. We conclude that the cancellation rule is not applicable in this case. First, we note that Appellants cited no law in their appellate brief in support of their argument that these statements are subject to the cancellation rule or that they create a genuine dispute of material fact. It is well-settled that the failure to cite appropriate authority as to each issue in the argument section of the appellate brief constitutes a waiver of that issue on appeal. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). Accordingly, this issue is waived.

Even assuming, *arguendo*, that this issue was properly raised, we conclude that the two statements are not contradictory for purposes of the cancellation rule. Here, Aurora's supplemental response to discovery includes additional information that was not included in the its initial response. The fact that this information was not previously expressed is not an indication that it is contradictory. This Court has held that for statements to be subject to the cancellation rule, the contradiction must "represent[] an unequivocal and irreconcilable conflict." *Gambill v. Middle Tenn. Med. Center*, 751 S.W.2d 145, 151–52 (Tenn. Ct. App. 1988). Providing additional information that does not directly conflict with any of the prior information is insufficient to meet this high standard. Finally, Aurora's statement that it was transferred the collateral file in April 2008 is corroborated by a document in the record showing the collateral file history of the Appellants' Promissory Note. *See* Cohen, *et al.*, *Tennessee Law of Evidence* § 6.07[5] (noting that corroboration is the traditional way to defeat a cancellation rule argument). Under these circumstances, we cannot conclude that Aurora's decision to supplement its discovery responses creates a genuine issue of material fact.

Finally, the fact that Aurora never submitted the original Promissory Note is not sufficient to create a genuine dispute of material fact. From our review of the Promissory Note, Appellants waived their right of presentment. Tennessee law defines "presentment" as "a demand made by or on behalf of a person entitled to enforce an instrument . . . to pay the instrument made to the drawee or a party obliged to pay the instrument." Tenn. Code Ann. § 47-3-501(a). Tennessee law also requires that "[u]pon the request of the person to whom presentment is made, the person making presentment must exhibit the instrument." Tenn. Code Ann. § 47-3-501(b)(2). However, the exhibition of the instrument is excused where "by the terms of the instrument presentment is not necessary to enforce the obligation of endorsers or the drawer" or "the drawer or endorsee whose obligation is being enforced has waived presentment or otherwise has no reason to expect or right to require that the instrument be paid or accepted." Tenn. Code Ann. § 47-3-504(a) (iii, iv). Recently, a federal

court applying Tennessee law held that, construing these provisions together with a waiver of presentment clause in a promissory note, "the production of the note itself is not required" to enforce a promissory note. ***Gibson v. Mortg. Elec. Registration Sys., Inc.***, No. 11–2173–STA, 2012 WL 1601313 (W.D. Tenn. May 7, 2012); *see also **Donaldson v. BAC Home Loans Servicing, L.P.***, 813 F.Supp.2d 885 (M.D. Tenn. 2011) ("Defendant is correct that it has no legal obligation to produce the Note or otherwise make a demand in order to enforce the Note, as Plaintiff waived any such requirement."). As such, the fact that Aurora never produced the original Promissory Note is insufficient to defeat summary judgment. *See also **Dickerson v. Regions Bank***, No. M2012-01415-COA-R3-CV, 2014 WL 1118076, at *8 (Tenn. Ct. App. March 19, 2014), *perm. app. denied* (Tenn. Aug. 27, 2014) (noting that other states generally "decline to recognize 'show me the note'" defense in the context of non-judicial foreclosures).

Based on the foregoing, we conclude that Appellants have failed to meet their burden to defeat summary judgment by establishing a genuine issue of material fact as to Aurora's status as a transferee of the Promissory Note.[7] Here, the undisputed facts show that Aurora was a transferee pursuant to Tennessee Code Annotated Section 47-3-203 as early as April 2008. Accordingly, Aurora was entitled to enforce the loan.

### Substitute Trustee

Appellants next argue that regardless of whether Aurora was properly transferred the Promissory Note pursuant to Tennessee Code Annotated Section 47-3-203, its appointment of Nationwide as Substitute Trustee was invalid because Aurora was not assigned an interest in the Deed of Trust until November 18, 2011, but appointed a Substitute Trustee and initiated foreclosure proceedings prior to that date. Notice provisions in a Deed of Trust are subject to strict compliance and a foreclosure may be declared void when the trustee fails to abide by the notice provisions contained therein. As explained by this Court:

> In general, Tennessee law has required the trustee's strict compliance with the advertisement and notice terms as provided in the deed of trust. See, e.g., ***Henderson v. Galloway***, 27 Tenn. 692, 695-96 (Tenn. 1848). The consequences of a foreclosing

---

[7] Our holding herein pretermits any issue concerning the alleged "split" of the Deed of Trust and the Promissory Note, as discussed in ***Carpenter v. Longan***, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872). In their own brief, Appellants concede that "the security follows the debt," and that proper transfer of the Promissory Note carried with it the Deed of Trust. *See **Dickerson v. Regions Bank***, No. M2012-01415-COA-R3-CV, 2014 WL 1118076, at *8 (Tenn. Ct. App. March 19, 2014), *perm. app. denied* (Tenn. Aug. 27, 2014) (applying South Carolina substantive law regarding a missing instrument).

trustee's failure to comply with foreclosure terms depend upon the source of the requirements. Specifically, if the terms are sufficiently clear and originate in the deed of trust, the law demands strict compliance for the conveyance to be valid. *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936). In contrast, where a foreclosing trustee proceeds according to statutory requirements, the law in Tennessee is not so exacting. *See* Tenn. Code Ann. §§ 35-5-101-35-5-116 (2001 & Supp. 2006) (addressing non-judicial sales pertaining to the foreclosure of deeds of trust). The failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable. *See* Tenn. Code Ann. § 35-5-106 (2001 & Supp. 2006) (sale without advertisement is not void); *Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337 (Tenn. 1936); *Williams v. Williams*, 156 S.W.2d 363, 369 (Tenn. Ct. App. 1941).

But the parties can vary the terms of foreclosure by contract, and where a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement. *See* Tenn. Code Ann. § 35-5-101(d) (2001 & Supp. 2006) ("Nothing in this section shall be construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments."); *McIntyre*, 89 S.W.2d at 336 (holding a foreclosure sale to be void, and purchaser's title invalid, where trustee sold property after twenty-two days of advertisement, rather than the twenty-eight days required by the deed of trust); *Potts v. Coffman*, 240 S.W. 783, 784 (Tenn. 1922). If the trustee breaches the controlling terms, the foreclosure sale may be set aside. *McIntyre*, 89 S.W.2d at 337; *In re: Kitts*, 274 B.R. 491, 494 (Bankr. E.D. Tenn. 2002) (setting aside a foreclosure sale in light of the trustee's violation of the deed of trust default notice provisions). When the purchaser at the foreclosure sale has drafted the deed of trust controlling the sale, and where the deed of trust waives and conveys the makers' equity of redemption for the benefit of the purchaser, the instrument "must be strictly construed, and the terms thereof must be followed strictly by the trustee, in order to deprive the makers of their title by means of a sale thereunder." *McIntyre*, 89 S.W.2d at 336. For example, a trustee

> must comply with terms such as notice of time and place of sale,
> as well as personal notice of sale, if provided for in the deed of
> trust[.]

*Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. 2008). Appellants argue that without an appropriate appointment of a Substitute Trustee, Aurora's foreclosure failed to comply with the notice requirements contained in the Deed of Trust and summary judgment should be granted in their favor. Respectfully, this argument is without merit.

We have previously held that Aurora was a transferee of the Promissory Note around April 2011. According to Appellants' own appellate arguments,"the security follows the debt." *Dickerson*, 2014 WL 1118076, at *8. The United States Supreme Court explained this doctrine in *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872), stating:

> The note and mortgage are inseparable; the [note] as essential,
> the [mortgage] as an incident. An assignment of the note carries
> the mortgage with it, while an assignment of the [mortgage]
> alone is a nullity . . . . The mortgage can have no separate
> existence.

*Id.* at 274. The Tennessee Supreme Court has likewise held that "the note [i]s the principal thing and the mortgage [i]s the incident—the transfer of the note secured as a transfer *pro tanto*[8] of the incident, the lien of the mortgage." *W.C. Early Co. v. Williams*, 135 Tenn. 249, 186 S.W. 102, 103–04 (Tenn. 1916). Thus, because Aurora was transferred the Promissory Note in April of 2008, the Deed of Trust was also transferred as of that date. Aurora's appointment of a Substitute Trustee, occurring after that date, was therefore, valid. Appellants raise no other allegations that the foreclosure sale was unfair or violated any statutory provisions. Several federal cases applying Tennessee law have concluded that a transferee pursuant to Tennessee Code Annotated Section 47-3-203 has the right to foreclose on the property at issue in the transferred instrument. *See Gibson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-2173-STA, 2012 WL 1601313, at * (W.D. Tenn. May 7, 2012) ("Under Tennessee law, 'the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument.'") (quoting *W.C. Early*, 186 S.W. at 103–04); *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F.Supp.2d 885, 888–96 (M.D. Tenn. 2011) (allowing foreclosure without mentioning a requirement that the transferee be also separately assigned the deed of

---

[8] A Modern Legal Dictionary defines "*pro tanto*" as "to that extent; as far as it goes." Bryan A. Garner, *A Modern English Dictionary* 708 (2d ed. 2005).

trust securing payment on the promissory note); ***In re Hunter***, 466 B.R. 439, 452 n.6 (Bankr. E.D. Tenn. 2012) (same). Under these circumstances, we conclude that the trial court did not err in holding that Aurora properly appointed Nationwide as Substitute Trustee, and that Nationwide's foreclosure sale was valid.

**Release of Funds**

Appellants finally argue that should this Court reverse the grant of summary judgment in Aurora's favor, this Court should also reverse the trial court's ruling with regard to Aurora's motion to release the funds held by the Circuit Court Clerk. Because we have determined that the trial court did not err in granting summary judgment, this issue is moot.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants Yvette D. Woody and Simon D. Woody, Jr., and their surety.

_____
J. STEVEN STAFFORD, JUDGE