### Porter, Assignee, etc., *v.* King and another.

(*District Court, W. D. Pennsylvania.*    April 1, 1880.)

Mortgage—Assignee—Secret Equities.—The assignee of a mortgage takes it free and discharged from the secret equities of third persons.

In Equity.

Acheson, J.    This controversy concerns a bond, and mortgage securing the same, bearing date March 3, 1877, from Hamilton Lacock and wife to S. B. W. Gill, who was adjudicated a bankrupt, November 28, 1877.    The bond is conditioned for the payment of the sum of $5,200, in two years from date, with interest payable semi-annually.    The mortgage is upon real estate in Allegheny City, and was recorded April 3, 1877, in Mortgage Book, vol. 225, p. 485.    These securities were found by W. D. Porter, the assignee in bankruptcy of Gill, among the papers of the latter, and were taken possession of by the assignee.    Rev. Matthew M. Pollock, one of the defendants, claims to be the assignee for value of $1,000 of said mortgage, by an assignment from Gill dated April 9, 1877, and to enforce his claim instituted legal proceedings against the assignee in bankruptcy.    The other defendant, William C. King, claims to be the purchaser and assignee for value of the whole of said bond and mortgage, by assignment from Gill, dated April 12, 1877, and to enforce

his claim filed a bill in this court against the assignee in bankruptcy.

The latter thereupon filed his bill in this case, praying, *inter alia*, that the defendants might interplead in respect to said bond and mortgage, and settle their conflicting claims. The defendants having severally answered the bill, there was a decree of interpleader and an issue was formed between them.

The case was eventually heard upon a master's report, and exceptions thereto, and the testimony taken by him.

The material facts are as follows: The bond and mortgage in question were given by Hamilton Lacock and wife to Gill, for money borrowed to pay off another mortgage against the Lacocks, held by Mrs. Eliza Lewis. Prior to making the mortgage, Gill told Hamilton Lacock he was getting the money from King, and he informed him he had got it from King. Gill paid off the Lewis mortgage, and therefore there is no question as to the liability of Lacock and wife upon the mortgage, the subject of this controversy. This mortgage bears date March 3d, and was acknowledged March 8th, and was left for record April 3, 1877.

About March 13, 1877, the Rev. Matthew M. Pollock gave to Gill $1,000, to be invested in a mortgage. No particular mortgage was then mentioned, but in a few days thereafter Pollock called on Gill for an assignment, when Gill said he would send it by mail, and mentioned the property the mortgage was on and its amount, which statements corresponded with the assignment afterwards sent to Pollock. On April 9, 1877, Gill mailed to Pollock, whose post-office address was Jolly, Ohio, a written assignment bearing that date, and executed under the hand and seal of Gill. This paper, after reciting a mortgage from Hamilton Lacock and wife to S. B. W. Gill, dated March 3, 1877, recorded in Mortgage Book, vol. 227, p. 151, for $5,200, with a brief but correct description of the premises, assigns to Pollock "$1,000 of the money secured by the above stated mortgage, with interest thereon from March 30, 1877." This assignment reached Pollock in due course of mail, to-wit, in about four days. He did not pro-

cure his assignment to be entered of record, nor did he give notice of it to the mortgagors. It was not until some considerable time after Gill had absconded, (which he did about September 17, 1877,) that the Lacocks first heard of the assignment to Pollock.

On the twelfth day of April, 1877, Wm. C. King purchased from Gill the said bond and mortgage. The bond was then in Gill's hands. The mortgage he had left in the recorder's office for record on April 3, 1877. King paid Gill, for the bond and mortgage, $4,800 or $4,900 in cash, and upon the back of the bond Gill executed, under his hand and seal, an assignment to King, bearing date April 12, 1877, of "the within bond and all money secured thereby." There was nothing on the bond or mortgage to show any prior assignment, and King purchased the securities and paid the consideration therefor in good faith, and in entire ignorance of the assignment to Pollock. Shortly after his purchase King had the actual possession of both bond and mortgage, but, upon Gill's suggestion that he had a good safe in his office, and that it was convenient for him to collect the interest, King left the papers with him, taking the following receipt:

"Received from Mr. Wm. C. King, April 25, 1877, the bond and mortgage of H. Lacock and Martha, his wife, dated March 3, 1877, for five thousand two hundred dollars, for two years, interest payable semi-annually, which said mortgage and bond has been assigned to him. I am to hold the same for safe-keeping and collection of interest.

"S. B. W. GILL."

Gill also gave King (and he thinks at the same time he received the above receipt) the recorder's receipt, which then read as follows:

"RECORDER'S OFFICE, ALLEGHENY COUNTY,
"PITTSBURGH, April 3, 1877.

"Received the following for record: One mortgage from Hamilton Lacock to S. B. W. Gill. Assigned to W. C. King April 12, 1877. $2.50 paid.

"R. J. RICHARDSON, Recorder."

From the statements in these receipts King supposed that Gill had made an assignment to him of the mortgage on the margin of the record; but, in fact, Gill did not assign the mortgage of record. This, however, was not discovered by King until after Gill had absconded. Within three days after Gill had left, King gave formal notice of his claim to Hamilton Lacock.

On September 11, 1877, Lacock paid Gill, for King, the first instalment of interest, for which Gill gave Lacock a receipt which states that the mortgage is "now held by Mr. Wm. C. King." This interest Gill paid over to King. S. B. W. Gill was a member of the Pittsburgh bar, and until he left, in September, 1877, his professional standing was good, and he possessed the confidence of the community.

I have been thus particular, in stating every fact which I regard as material, because I am constrained to dissent from the conclusion of the learned master in respect to the conflicting assignments to Pollock and King, which he thus states: "Neither of them being entered of record in the recorder's office, on the margin of the recorded mortgage, it is simply a question as to whose assignment was first delivered." And, treating the assignment to Pollock as delivered when it was deposited in the post-office on April 9, 1877, he reports a decree in his favor for the portion of the mortgage assigned to him. But the case, it seems to me, is not one for the application of the maxim, *qui prior est tempore potior est jure.* There are here other considerations besides that of time, which cannot be ignored if we would reach a just conclusion.

Mathew M. Pollock, it must be observed, parted with no money or other valuable thing upon the faith of the Lacock bond and mortgage. He had left in Gill's hands $1,000, to be by him invested in a mortage at his discretion; and not in this particular mortgage, which was not then so much as mentioned.

In confiding his money to Gill, Pollock, in the first instance, trusted exclusively to his personal responsibility and integrity. His subsequent arrangement with Gill, which the latter carried out, was for an assignment which was entirely inadequate for

his protection, as it left Gill in possession of the bond and mortgage, and in a position to deal as lawful owner of the same with innocent third persons. *Jeffers* v. *Gill, for use,* 8 W. N. C. 19; *Kellogg* v. *Smith,* 26 N. Y. 18. It is said in Jones on Mortgages, (vol. 1, § 476,) that, except under peculiar circumstances, a person acting in good faith would not take a mere written transfer of the mortgage title without a delivery of the mortgage itself, and the note or bond secured thereby. Now, the actual good faith of Mr. Pollock is not open to question. But, unfortunately for him, he accepted such an assignment as no ordinarily prudent man would have taken; and it must be remembered that in his previous interview with Gill this manifestly was the kind of assignment which Gill proposed to mail to Pollock, and which the latter then impliedly agreed to accept.

After receiving his assignment he did absolutely nothing to make it efficient. He took no steps to have it made matter of record, or noted upon the original papers, and he did not even give the mortgagors notice. Had he given seasonable notice to Hamilton Lacock, it is highly probable that the double assignment would have been discovered in time to frustrate Gill's fraud and prevent this loss; for Lacock had contemporaneous information from Gill that King had advanced the money on the bond and mortgage.

William C. King, as we have seen, found the bond in Gill's hands, and the mortgage, if not in his actual possession, in the recorder's office, under his control, with nothing appearing upon either instrument to indicate any prior assignment. On the faith of the securities, without notice or means of knowledge of the assignment to Pollock, he made the purchase in perfect good faith, paying a full consideration. He immediately took the wise precaution of having the assignment to him put upon the back of the bond. He supposed, and from the receipts which Gill delivered to him he had good right to believe, that a proper assignment of the mortgage had been made on the margin of the record, in the customary way. But without such assignment the title to the mortgage passed to and vested in him; for it is firmly settled that the debt

is the principal, and the mortgage a mere security, appurtenant and secondary; and that the assignment of the bond, secured by a mortgage, carries with it the mortgage. *Kellogg* v. *Smith, supra; Carpenter* v. *Longam,* 16 Wall. 275.

Did King take subject to the secret claim of Pollock? This question, in my judgment, must be answered in the negative, both upon authority and principle. It has more than once been held in Pennsylvania that while the assignee of a mortgage takes it subject to the equities of the mortgagor, he takes it free and discharged of the secret equities of third persons. *Mott* v. *Clark,* 9 Barr, 399; *Prior* v. *Wood,* 7 Casey, 142; *Wetherill's Appeal,* 3 Grant, 281; *Jeffers* v. *Gill, for use, supra.* The same doctrine has been applied to the assignees of choses in action generally. *Fisher* v. *Knox,* 1 Harris, 622; *Hendrickson's Appeal,* 12 Harris, 363; *Redfearn* v. *Ferrier,* 1 Dow. (House of Lords Cases,) 50.

In this latter case Lord Eldon, treating of secret equities of third persons, and speaking of the assignment of back-bonds, said: "He had looked very anxiously and carefully to see whether there were any cases where latent equities had prevailed against intimated assignations, [assignments with notice to the debtors,] and he had found none." Id. 72. Again, he said: "If latent equities were permitted to prevail against assignations, the effect would be that nothing could ever be assigned." Id. 72.

Several of the above cases are cited with approbation in *Wetherill's Appeal, supra,* by Mr. Justice Strong, who, after a review of the authorities, says: "This is sufficient to indicate, if it does not fully determine, that the rule is that the purchaser for value of a chose in action is not to be affected by the latent equities of third persons. He is only bound to inquire of the debtor, and there is much reason for such rule. Secret equities in third persons are clogs upon alienation, and cannot, therefore, be favorites in law. The holder of them virtually empowers the creditor to practice a fraud upon the innocent—a fraud against which no vigilance can guard." 3 Grant, 287.

As already observed, the previous arrangement between

Gill and Pollock, in respect to the assignment to the latter, contemplated that it should be a separate written transfer, and that the securities themselves should be retained by Gill; and this arrangement was carried out. Thus was Gill allowed by Pollock to remain the apparent owner of the entire securities. It seems to me, therefore, that the case falls clearly within the principle that when one of two innocent persons must suffer, he must bear the burden or loss whose act or neglect has been the occasion of the suffering. *Wetherill's Appeal, supra; Jeffers* v. *Gill, for use, supra; Penn. R. Co.'s Appeal,* 5 Norris, 80.

Let a decree be drawn in favor of William C. King, in the issue between him and Matthew M. Pollock, and directing that W. D. Porter, the assignee in bankruptcy of S. W. B. Gill, deliver to said William C. King the said bond and mortgage, and duly assign to him of record the said mortgage.