Curran, Dennis J., J.
The US Bank National Association, f/k/a Wachovia Bank, N.A., as Trustee for GSAA Home Equity Trust 2005-11 (US Bank), commenced this action seeking declaratory relief and an order to reinstate a mortgage securing the real property of defendants, Paula T. Twomey and Robert H. Twomey, that had been erroneously discharged. The defendants Twomey counterclaimed, alleging three counts: unjust enrichment (Count I), declaratoiy judgment (Count II) and violation of chapter 93A (Count III).
The plaintiff moved for summary judgment on all three counts of defendants’ counterclaims. After hearing, a prior session judge dismissed counts I and III, leaving only Count II for trial. That count sought an adjudication that US Bank’s discharge of a mortgage . . be declared valid, maintaining the release of the [m]ortgage.” As such, it appears to be a mirror image of Count II of the plaintiffs verified complaint which seeks that the “subject mortgage should [ ], in equity, be revived and declared a valid and enforceable first mortgage . . .” The plaintiffs prayers also sought a declaration that the discharges “(be found] null and void.”
The plaintiffs complaint seeking, as it does, equitable revival of the first mortgage only, is subject to trial without a jury. The defendants insist upon a jury trial, claiming that genuine issues of fact remain. (See Joint Pre-Trial Memorandum, pages 2 and 3.) Notwithstanding that assertion, the defendant’s trial memorandum concedes that the material facts are “simply stated and not in material dispute.” (See Defendants’ Trial Memorandum, page 1.)
Those facts, well articulated previously by the motion judge, and thus repeated here, are as follows.
US Bank is the putative assignee of a mortgage on a property located at 15 Bishops Way in North Reading (the property). The defendants purchased the property for an amount in excess of $900,000. To fund this purchase, they borrowed $665,000 from South Star Funding (South Star) on July 7, 2005 and executed a mortgage, as is typical, in favor of Mortgage Electronic Registration System as nominee for South Star. Simultaneously, the Twomeys also took a second loan from South Star in the amount of $190,800, secured by a second mortgage to MERS, as nominee for South Star. On December 30, 2005, the Twomeys executed another mortgage, this time in favor of Wells Fargo Bank securing a debt of $ 191,180. It would appear that this loan was intended to discharge the second mortgage. However, on January 26, 2006, MERS recorded a discharge of the first mortgage securing the $665,000 note. The discharge recited that the note secured by the mortgage had been paid and cancelled.
Some years later, on December 17, 2009, notwithstanding the discharge that had previously been recorded, MERS assigned the first mortgage to US Bank. There exists a written assignment memorializing that assignment on that date. The assignment makes no reference to the note secured by the mortgage or whether any consideration was paid for the assignment.
The Twomeys (represented by defendant Paula T. Twomey, who is an attorney) acknowledged that they had paid only interest on the note for four years, but have not made any payments in at least the last two years.[1] The entire principal amount of the note was still outstanding at the time the mortgage discharge was recorded.
The trial of this matter was bifurcated with the plaintiffs complaint tried without jury on May 17, 2012.[2] The following are Findings of Fact, based on the credible evidence and reasonable inferences based on that evidence.
FINDINGS OF FACT
We begin with those facts to which the parties have agreed. See defendants’ trial memorandum, last page.
A. Undisputed Facts
1. The defendants Paula T. Twomey and Robert H. Twomey own 15 Bishops Way, North Reading, Massachusetts (the property).
2. The Twomeys purchased the property for an amount in excess of $900,000.
*612 3. To fund their purchase of the property, the Twomeys borrowed $855,000 — in two separate loans of $665,000 and $190,000, respectively — from South Star Funding, LLC.
4. On or about July 7, 2005, the Twomeys executed a mortgage in the amount of $665,000 (the first mortgage) in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for the lender, South Star Funding, LLC.
5. Simultaneously, the Twomeys executed a second mortgage in the amount of $190,000 (the second mortgage) in favor of MERS, as nominee for the lender, South Star.
6. The closings for the first and second mortgages were conducted by Tedesco and Twomey, P.C. as settlement agent.
7. At the time of the closings of the first and second mortgages, the defendant Paula Twomey was a principal of Tedesco and Twomey, P.C.
8. On or about December 30, 2005, the Twomeys executed a mortgage in the amount of $191,180.80 (the third mortgage) in favor of Wells Fargo Bank, N.A.
9. At the time of the closing of the third mortgage, the defendant Paula Twomey was a principal of Tedesco and Twomey, P.C.
10. The third mortgage was intended to pay off and discharge the second mortgage.
11. However, on or about January 26, 2006, MERS recorded, or caused to be recorded, an instrument with the Registry of Deeds purporting to discharge the first mortgage.
12. While the discharge referenced the book and page number of the first mortgage, the MIN # referenced on the discharge is consistent with the MIN # referenced on the second mortgage.
13. The discharge recited that the note secured by the mortgage had been paid and cancelled.
14. The debt secured by the first mortgage has not been paid in full.
15. The first mortgage secured a loan that provided, inter alia, for payments of interest only during the first ten years of the loan.
16. The Twomeys have paid about $250,000 in interest with no application to principal.
17. The entire principal amount of the note was still outstanding at the time the discharge was recorded.
18. The Twomeys have tried unsuccessfully to modify and/or refinance the first mortgage.
19. On or about December 17, 2009, MERS assigned the first mortgage to the plaintiff, US Bank National Association, f/k/a Wachovia Bank, FA, as Trustee for GSAA Home Equity Trust 2005-11.
20. The assignment makes no reference to the note secured by the first mortgage or whether any consideration was paid for the assignment.
B. Findings as to Disputed Facts
1. On or about December 17, 2009, MERS assigned the first mortgage to the plaintiff, US Bank National Association, f/k/a Wachovia Bank, FA, as Trustee for GSAA Home Equity Trust 2005-11. The recorded assignment is to US Bank and makes no reference to the note secured by the mortgage or any consideration paid for this assignment.
2. After the execution of the note secured by the first mortgage, South Star affixed an allonge endorsement — in blank — to the note.
3. The closing for the third mortgage and payoff of the second mortgage was conducted by Tedesco and Twomey, P.C. as settlement agents.
4. At the time of the closing of the third mortgage, the defendant Paula Twomey was a principal of Tedesco and Twomey, P.C.
5. U.S. Bank now holds the note secured by the first mortgage as endorsed in blank by South Star.
6. The Twomeys have not made a monthly payment on the mortgage at issue in well over three years.
7. The Twomeys presently owe over $650,000 on the mortgage at issue.
8. During at least the last three years of non-payment, the Twomeys have had both of their children in private school.
9. During at least the last three years of mortgage non-payment, the Twomeys have also owned real property near the ocean in Old Orchard Beach, Maine.
10. During at least the past three years of mortgage non-payment, the Twomeys have owned three motor vehicles.
11. On the morning of trial, the Twomeys drove to the courthouse in a Mercedes-Benz owned by Mrs. Twomey.
DISCUSSION
When a mortgage has been discharged by mistake, equity will set aside the discharge and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected. Provident Co-Operative Bank v. James Talcott, Inc., 358 Mass. 180, 189 (1970).
The Twomeys gave a mortgage to MERS, as nominee for the original lender, South Star and its successors and assigns, to secure a purchase money loan for the property. The second and third mortgages were given with record notice of the prioriiy held by the first mortgage.
The terms of the first mortgage indicate that the mortgage would be discharged, “(u]pon payment of all sums secured by [the mortgage].” Although the mortgage has been discharged, all sums secured by the mortgage have not been paid.
Because the loan was intended to be secured by a first mortgage on the property and because the loan *613 has not been repaid, MERS’ release of the first mortgage was in error, especially since the discharge refers to the MIN # of the second mortgage, not the first mortgage and in light of MERS’ attempt to later transfer the first mortgage to US Bank.
Both junior lien-holders obtained their interests in the property subject to the first mortgage. Neither the second mortgage ($190,000) nor the third mortgage ($191,180.80), could plausibly be claimed to be of sufficient value as to suggest that they were intended to pay off and replace the prior first mortgage ($660,000). Further, no other mortgages have been recorded in the period between the inadvertent discharge of the first mortgage and the commencement of this action.
Because all of the current lien-holders acquired their interests with record notice of the first mortgage, none of the junior lien-holders would be adversely impacted by revival of the first mortgage and equitable subordination of their liens.[3]
US Bank is the successor or assign of South Star on the first mortgage and is entitled to revive the first mortgage and the equitable subrogation of the second and third mortgages to its priority mortgage interest.
The loan at issue originated with South Star as lender. The mortgage securing the loan was given to MERS “as nominee for” South Star and its successors and assigns. Soon after receiving the original executed note from the Twomeys, South Star endorsed the note “in blank,” converting the note as a negotiable instrument to bearer paper. Thus, any subsequent bearer of the note endorsed in blank has the right to enforce its terms. See G.L.c. 106, §§3-109(a) and 3-205(b).
Since the note was secured by a mortgage on the property, any subsequent bearer of the note also has the right to direct MERS to assign the mortgage in order to enforce the security. The transfer of the note automatically transfers an equitable interest in the underlying mortgage, even without a formal assignment. U.S. Bank Nat’l Ass’n v. Ibanez, 458 Mass. 637, 652 (“[T]he holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage . . .”); see also Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271 (1872) (“The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equiiy”). Thus, whether or not MERS actually assigned the mortgage to US Bank, an equitable right to the mortgage was transferred to US Bank along with the note, which it now holds.
Although US Bank did not have MERS formally assign it the mortgage until December 17, 2009 — for the purpose of commencing foreclosure proceedings on Twomeys’ delinquent loan obligations — US Bank had the equitable right to demand the assignment the instant it became the bearer of the endorsed note.
Because US Bank held the note endorsed in blank, it had an equitable right to command MERS to assign the mortgage to it. See Ibanez, supra. US Bank did not have to pay MERS consideration for the assignment of the mortgage. Whether US Bank obtained the note by virtue of an arms-length purchase or by gratuitous transfer is of no consequence to its right to enforce the note or to demand assignment of the mortgage from MERS.[4]
Defendant Paula T. Twomey, formerly an attorney with Tedesco and Twomey, P.C., is well familiar with the mortgage industry. As an attorney and principal at Tedesco and Twomey, P.C., Twomey has fifteen years’ experience in conducting residential real estate closings, with as many as 40 such closings a week. Tedesco and Twomey, P.C., the defendant’s own firm, conducted the real estate closing on the first and second mortgages and the refinance closing on the third mortgage.
Tedesco and Twomey, P.C. would have been responsible for paying off the second mortgage as part of the third mortgage refinance, and likely would have provided recording information to the lender to ensure the proper discharge of the second mortgage. That the first mortgage was discharged instead raises a question as to whether inaccurate information was provided to MERS when soliciting a discharge of the second mortgage.
Twomey has admitted that she has been tiying to persuade US Bank and the loan servicer, Wells Fargo, to negotiate a loan modification. Such trial testimony suggests that she acknowledges the existence of the loan obligation.
This simple scrivener’s error has spawned two and a half years of litigation, and undoubtedly caused the plaintiff to incur significant counsel fees, while at the same time, the Twomeys’ litigational odyssey appears to have cost them little — the defendant attorney Paula T. Twomey defended pro se; she asserted counterclaims that consumed a year and a half of litigation. Compare paper no. 13.0 (Answer and Counterclaim, dated January 16, 2010), with paper no.: 21.0 (Memorandum of Decision and Order on Summary Judgment, dated June 30, 2011). While this case was pending over the past two and a half years, the Twomeys have enjoyed the comforts of living in a nearly million dollar home without making a single monthly payment on a mortgage exceeding $650,000, have been able to send their children to private school, own three vehicles, own a second home very near Maine oceanfront, and indeed, drove to the courthouse on the morning of trial in a Mercedes-Benz.[5]
This Court is being asked to act in equity. Fairness, therefore, cries out that a declaratory judgment enter that:

(1) the mortgage dated July 7, 2005 which is recorded with the Middlesex County (Southern District) Registry of Deeds at Book 45573, Page 170 be 
*614
declared a valid first and enforceable mortgage concerning 15 Bishops Way, North Reading, Massachusetts;

(2) such mortgage be primary to the interests of the defendants;
(3) the wrongful discharge of the mortgage recorded with the Middlesex County (Southern District) at Book 46938, Page 243 be rendered null and void.

This admission was made at the summary judgment stage, but it is now a year later at the trial of this matter, and the Twomeys have failed to make any such payments whatsoever in about three years.

Nhe defendants’ remaining counterclaim, on which they continue to argue that a jury trial right applies, has been deferred until after the plaintiffs claims have been addressed.

The junior lien-holders were named as parties-in-interest to this action and have not answered or appeared to oppose US Bank’s request to revive the first mortgage.

 Technically, US Bank holds the note (and mortgage) as tmstee of a securitized trust. Twomey’s note and mortgage are merely one of many mortgage loans held in the trust for the benefit of various investors. The existence of the trust or US Bank’s role as trustee is not in dispute.

 The defendant attorney Twomey claims there are circumstances that mitigate these facts, but the Court is not so convinced.