**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CAROL LEE DEPUYDT-MEIER,<br>　　　　　　Debtor. | BAP Nos. NC-21-1001-SFB<br>NC-21-1002-SFB<br>(Related Appeals) |
| CAROL LEE DEPUYDT-MEIER,<br>　　　　　　Appellant,<br>v.<br>U.S. BANK, NA, as Legal Trustee,<br>　　　　　　Appellee. | Bk. No. 4:20-bk-41288<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
William J. Lafferty, III, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Debtor Carol Lee DePuydt-Meier ("Meier") appeals from two orders: (1) an order overruling her objection to the proof of claim filed by U.S. Bank, NA as Legal Title Trustee for Truman 2016 SC6 Title Trust ("Truman Trustee"); and (2) an order granting the Truman Trustee's motion for relief from stay to proceed with foreclosure against Meier's residence. All of Meier's arguments on appeal challenge the Truman Trustee's standing.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

The bankruptcy court held a claim objection hearing at which it weighed the evidence presented by the parties. The court found that the note had been indorsed in blank and the Truman Trustee possessed the note. As such, the Truman Trustee was entitled to enforce the note and had standing to file a proof of claim.

As for the relief from stay motion, the bankruptcy court granted the motion under § 362(d)(1),[1] finding that the Truman Trustee's evidence was more than sufficient to establish that it held a colorable right under California law to enforce the recorded deed of trust assigned to it.

We agree with the bankruptcy court's disposition of both matters, so we AFFIRM.

### FACTS[2]

On March 30, 2006, Meier borrowed $600,000 from Downey Savings and Loan Association, F.A. ("Downey"). In exchange, Meier signed an Adjustable Rate Note ("Note") promising to repay the loan, with interest. Meier also executed a Deed of Trust, which was promptly recorded.

In November 2008, the Federal Deposit Insurance Corporation ("FDIC") began serving as receiver for Downey and thereby took control of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in Meier's bankruptcy cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Downey's assets at that time. In turn, the FDIC transferred Downey's loan portfolio to U.S. Bank.

Meier ceased making payments on the Note in or around February 2010. In an apparent attempt to impede U.S. Bank's efforts to foreclose, Meier commenced a series of bankruptcy cases as well as state court litigation. She has initiated a total of four bankruptcy cases over the last ten years.

Meier filed her latest chapter 13 petition on August 3, 2020. Shortly thereafter, the Truman Trustee filed its proof of secured claim in the amount of $924,688.73. The Assistant Secretary of Rushmore Loan Management Services ("Rushmore") signed the proof of claim on behalf of the Truman Trustee as its servicing agent.

In accordance with Rule 3001(c)(1), the Truman Trustee attached to its proof of claim a copy of the Note. The attached documentation also included — immediately following the Note — two allonges. The first one ("First Allonge") correctly identified the Note by Meier's name, address, and the date and amount of the Note. It further provides for payment of the Note "to the Order of U.S. Bank National Association." The First Allonge is signed on behalf of the FDIC as receiver for Downey by Faustino S. Barrera, as "Attorney-In-Fact." He is identified elsewhere as U.S. Bank's "Records/Lien-Release Manager." According to the First Allonge, Barrera was authorized to sign the First Allonge on behalf of the FDIC as receiver

3

for Downey under a Limited Power of Attorney recorded in Dallas County, Texas, in October 2012.

The second allonge ("Second Allonge") also correctly identified the Note by Meier's name, address, and the date and amount of the Note. The "pay to the order of" line was left blank, meaning there is no specific named payee identified in the Second Allonge. The Second Allonge is signed on behalf of U.S. Bank National Association by Debra R. Wiese, who is identified as its Vice President.

The documentation attached to the proof of claim also included copies of two recorded assignments of the Deed of Trust. The first one assigned the beneficial interest in the Deed of Trust from the FDIC as receiver for Downey to U.S. Bank National Association, and the second one assigned the beneficial interest in the Deed of Trust from U.S. Bank National Association to the Truman Trustee. The proof of claim also included the other statements and documents as required by the Rules.

Meier then filed her claim objection and supporting declarations. Her claim objection largely hinged on a chronological "Loan Analysis" she prepared cataloguing a number of perceived errors, omissions, and defects in the origination of her loan and in the transfer of rights and interests in the Note and Deed of Trust.

Based on her Loan Analysis, Meier contended as follows: (1) Downey sold or securitized her loan in 2006, so the FDIC never took control of any property interest in her loan when it was appointed as receiver of Downey

4

in 2008; (2) none of the FDIC's various agreements with U.S. Bank specifically referred to any transfer of an ownership interest in Meier's loan; (3) U.S. Bank never paid any significant consideration for its purported receipt of an ownership interest in Meier's loan; (4) neither the First Allonge nor the Second Allonge were properly affixed to the Note, so they were ineffective to give the Truman Trustee the right to enforce the Note;[3] (5) Meier notified Downey in September 2008 of her decision to rescind the loan transaction; (6) the FDIC-U.S. Bank Loan Sale Agreement contained a number of defects, including but not limited to sometimes identifying U.S. Bank as the purchaser of the subject loans and at other times merely as servicer of the subject loans; (7) in conjunction with Meier's 2011 bankruptcy case, Meier made a total of four payments on account of the loan that neither U.S. Bank nor the Truman Trustee ever credited Meier for; and (8) the recorded assignments of the Deed of Trust from the FDIC to U.S. Bank, and from U.S. Bank to the Truman Trustee, both were defective.

In October 2020, the Truman Trustee filed a reply in response to Meier's claim objection. It also filed evidentiary objections challenging

---

[3] In a variation of this argument, Meier contended that there was plenty of room on the Note itself for an indorsement, so it was improper for the FDIC and U.S. Bank to use allonges at all. But Cal. Com. Code § 3204 does not make insufficient space on the instrument itself a prerequisite to the validity of an allonge. As the official Uniform Commercial Code comment accompanying the statute specifically provides, "[a]n indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."

most of Meier's claim objection documentation as irrelevant, lacking authentication, and inadmissible hearsay.

Most importantly, the Truman Trustee filed the declaration of Calvin Dawson, with exhibits, in further support of its standing to file its proof of claim. Dawson identified himself as an employee of Rushmore and identified Rushmore as the Truman Trustee's loan servicer. He also identified himself as a custodian of records for Rushmore, which records he stated Rushmore maintains in the ordinary course of business. According to Dawson, the facts set forth in his declaration were known to him based on personal knowledge or based on his review of Rushmore's books and records.

Dawson stated that true and correct copies of the Note, with the First Allonge and Second Allonge, and the Deed of Trust, were attached to his declaration as exhibits. The copies attached to the declaration appear identical to the copies attached to the Truman Trustee's proof of claim. Dawson specified that he was "informed and believe[s]" that the First Allonge and the Second Allonge are "physically attached" to the original Note, inasmuch as "they appear in [the Truman Trustee's] chain of custody and title as such according to [Rushmore's] and [the Truman Trustee's] business records."

Importantly, Dawson additionally stated that the Truman Trustee, "directly or through its Agent, is in possession, custody, and control of the original endorsed Note and Allonges attached thereto . . . ."

6

Meier later filed a supplemental declaration, in which she attempted to attack Dawson's credibility. Meier essentially argued that Dawson's account of her loan documents in Rushmore's custody was untrustworthy. In support of this point, Meier referred to Rushmore's September 23, 2020 response to her Qualified Written Request for information regarding her loan ("QWR Response"). Meier noted that the copies of her loan documents attached to Rushmore's QWR Response did not include any allonges. Therefore, she opined that Dawson's account regarding the First Allonge and Second Allonge being affixed to the original Note must be inaccurate.

Meier further attacked the Dawson declaration by pointing out that the QWR Response stated that the loan documents were held in a secure location in Irvine, California, whereas Dawson stated that he signed his declaration in Farmers Branch, Texas. Based on these two points, Meier concluded that the QWR Response and the Dawson Declaration were fatally at odds with each other, and she therefore expressed the belief that Rushmore did not have any of her original loan documents — with or without any allonges.

In November 2020, the Truman Trustee filed its motion for relief from the automatic stay under § 362(d)(1) to exercise its remedies under the Deed of Trust against Meier's residence. The Truman Trustee supported its motion with another declaration by Dawson. This declaration in support of relief from stay was virtually identical to Dawson's declaration in support

7

of the Truman Trustee's claim. Moreover, the copies of the loan documents attached to both declarations matched those attached to the Truman Trustee's proof of claim.

Meier opposed the relief from stay motion. The types of arguments she made in opposition mirrored those she made in her claim objection papers.

On December 9, 2020, the bankruptcy court held a relief from stay hearing. After considering the parties' arguments and evidence, the court granted the relief from stay motion, finding that the Truman Trustee had established both its standing to seek relief from stay and cause for the requested relief.

On December 10, 2020, the bankruptcy court held a hearing on the claim objection. The court acknowledged the distinct standards governing standing to seek relief from stay and standing to file a proof of claim, citing *Veal v. American Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 913-15 (9th Cir. BAP 2011). Ultimately, the court concluded that the Truman Trustee had presented sufficient evidence to establish its standing to file a proof of claim and to establish a prima facie case regarding the validity and amount of its claim against Meier. The court further found that Meier had failed to present any relevant probative evidence to rebut the Truman Trustee's prima facie case supporting its claim.

On December 15, 2015, the bankruptcy court entered its order granting the Truman Trustee's motion for relief from the automatic stay.

And on December 16, 2015, the bankruptcy court entered its order overruling Meier's claim objection. Meier timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error when it overruled Meier's claim objection?

2. Did the bankruptcy court commit reversible error when it granted the Truman Trustee's motion for relief from stay?

## STANDARDS OF REVIEW

We review orders granting relief from stay for abuse of discretion. *In re Veal*, 450 B.R. at 915. Under the abuse of discretion standard, we review legal issues de novo and factual findings under the clearly erroneous standard. *Id.* (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009) (en banc)). Factual findings are clearly erroneous if they are "illogical, implausible, or without support in inferences that may be drawn from the record." *Id.* (quoting *Hinkson*, 585 F.3d at 1263).

Orders overruling claim objections can present legal issues as well as factual issues. *Id.* at 918. The former are reviewed de novo and the latter are reviewed under the clearly erroneous standard. *Id.* (citing *Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 434 (9th Cir. BAP 2005)).

9

We may affirm on any ground supported by the record. *Lakhany v. Khan (In re Lakhany)*, 538 B.R. 555, 559 (9th Cir. BAP 2015).

## DISCUSSION

In both of her appeals, Meier focuses exclusively on standing issues. She challenges both the order overruling her claim objection and the relief from stay order on some of the same grounds she asserted in the bankruptcy court. Moreover, the standing arguments she asserted in her relief from stay appeal are derivative of those she asserted in her claim appeal. Because the standards governing standing to file a claim and to seek relief from stay are distinct, *see In re Veal*, 450 B.R. at 913-15, we will address her two appeals separately.

**A.      Appeal from order overruling claim objection.**

**1.      Relevant law.**

Standing is an "independent threshold issue" in all federal litigation. *Id.* at 921 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). It is an inherently factual issue, and the party seeking relief from the court bears the burden of proof to establish its standing. *Id*. at 921-22. In the context of a claim objection proceeding, a duly-filed proof of claim compliant with all applicable Rules is prima facie evidence of the validity and amount of the claim. Rule 3001(f); *In re Veal*, 450 B.R. at 921. However, *Veal* makes clear

that the standing inquiry is both independent of, and a prerequisite to, the Rule 3001(f) presumption. *Id.* at 921-22.[4]

As we explained in *Veal*, a "person entitled to enforce" a note ("PETE") has standing to file a proof of claim. *See id.* at 913 (recognizing that the alleged servicer had to show that it was a PETE or the agent of a PETE in order to claim a distribution from the maker's bankruptcy estate in payment of the note). As *Veal* also pointed out, there are several different methods for a creditor to qualify as a PETE. *See id.* at 910-13. Under the most common and straightforward of these methods, the creditor becomes a holder of the note — and hence a PETE — by the process of "negotiation." *Id.* at 910-11. A negotiable promissory note is negotiated when possession of the original note is transferred along with any necessary indorsements. *Id.; see also* Stephen C. Veltri, Greg Cavanagh,

---

[4] There is one other presumption worth mentioning. With some exceptions not relevant here, each signature on a negotiable promissory note "is presumed to be authentic and authorized . . . ." Cal. Com. Code §3308. A signature on an indorsement on the face of a promissory note qualifies for this presumption. *See, e.g., Baroni v. Wells Fargo Bank, N.A. (In re Baroni)*, BAP No. CC-14-1579-KuDTa, 2015 WL 6941625, at *5–6 (9th Cir. BAP Nov. 10, 2015). But a signature on an indorsement set forth on a separate piece of paper — known as an "allonge" — only qualifies as a valid indorsement and as part of the instrument if it is properly affixed to the instrument. *See In re Veal*, 450 B.R. at 911 n.24 (citing U.C.C. § 3-204(a) and relevant case law); *see also* Cal. Com. Code § 3204(a) (same). Here, Meier has not challenged the authenticity of the signatures or the authorization of the signatories on the First and Second Allonges. Instead, she challenges that the two allonges were properly affixed to the Note. If she were correct, the two allonges would not qualify as valid indorsements. *See In re Veal*, 450 B.R. at 911 n.2; Cal. Com. Code § 3204(a). In short, the Cal. Com. Code § 3308 presumption is neither relevant nor helpful to our resolution of the validity of the allonges.

Payments, 67 Bus. L. 1257, 1267 (2012) (citing U.C.C. §§ 1-201(b)(21)(A), 3-201, 3-204 & 3-205).[5]

### 2. The Truman Trustee established its standing to file a proof of claim.

Here, the Truman Trustee presented all of the evidence ordinarily required to establish that it was a holder of the Note and thus qualified as a PETE. In his declaration, Dawson stated his knowledge based on his role as one of the custodians of records for Rushmore, which serves as the Truman Trustee's servicing agent. Based on those records, he stated that the original Note, with the First and Second Allonges attached, was in the possession, custody, and control of either the Truman Trustee or Rushmore, acting as the Truman Trustee's agent. He also attached to his declaration a "[t]rue and correct" copy of the Note, along with the accompanying allonges.

An examination of the allonges attached as exhibits reflects that the First Allonge, executed by the FDIC's attorney-in-fact, made the Note payable to the order of U.S. Bank National Association. And the Second Allonge, executed by a vice president of U.S. Bank National Association, made the Note payable to whoever held possession of the original Note, because the Second Allonge contained an indorsement in blank. *See Lane v.*

---

[5] Both parties have assumed that the Note qualifies as a negotiable instrument within the meaning of Cal. Com. Code § 3104(a). The bankruptcy court also treated the Note as a negotiable instrument. We do the same. Any issue regarding whether the Note actually qualifies as a negotiable instrument has been forfeited. *See Golden v. Chi.*

*Bank of N.Y. Mellon (In re Lane)*, 959 F.3d 1226 (9th Cir. 2020) (citing Cal. Com. Code § 3205(b)); *Zipser v. Ocwen Loan Servicing, LLC (In re Zipser)*, BAP No.CC-15-1258-FTaKu, 2016 WL 1168736, at *3 (9th Cir. BAP Mar. 23, 2016), *aff'd*, 699 F. App'x 673 (9th Cir. 2017) ("We have repeatedly held that a possessor of a note endorsed in blank is a party entitled to enforce the note and foreclose on any collateral.").

The bankruptcy court considered the documents the Truman Trustee presented in support of its proof of claim and considered them to be strong evidence supporting the Truman Trustee's standing. Meier has consistently disagreed and believes that the Truman Trustee's evidence was unreliable. In addition, she repeatedly has expressed the concern that the Truman Trustee is not really the person entitled to enforce the Note. Despite over a decade of nonpayment, four bankruptcy filings, and several state court lawsuits, there is no evidence that any other entity has claimed a right to enforce the Note adverse to U.S. Bank or the Truman Trustee. Still, we examine the grounds she has asserted in support of her concerns.

Meier asserts that Dawson's declaration and his loan document exhibits are untrustworthy and inaccurate. She points to three different versions or sets of copies of her loan documents that she has received during her years of litigation with the Truman Trustee's predecessor in interest U.S. Bank. One of these sets of copies was attached to U.S. Bank's proof of claim filed in Meier's 2011 bankruptcy case. Another set of copies

---

*Title Ins. Co. (In re Choo)*, 273 B.R. 608, 613 (9th Cir. BAP 2002).

allegedly was filed by U.S. Bank in Meier's state court litigation. And yet another set was included in Rushmore's QWR Response.

Of these three versions of loan document copies, the 2011 proof of claim version and the QWR Response version included no allonges. But one set of loan document copies — the set allegedly from the state court litigation — contained a single allonge from the FDIC to U.S. Bank (the "Old Allonge"). The Old Allonge differs from the First Allonge.[6] However, unlike the First and Second Allonges, the Old Allonge was **not** attached to the identical copies of the Note accompanying the Truman Trustee's proof of claim and the Dawson declarations.

Meier also continues to challenge the trustworthiness of the Dawson declaration based upon Dawson's signing of his declaration in Texas, whereas Rushmore stated in its QWR Response that the original loan documents were held in a secure location in Irvine, California.

Meier's arguments on appeal do not differ from those she made to the bankruptcy court. In short, she contends that the court erred because it did not adopt her arguments and view of the evidence that it was impossible to discern which of the loan document copies is the true and correct copy of the original loan documents. This leads her to conclude that

---

[6] The Old Allonge differs from the First Allonge in several respects. The Old Allonge is signed by a different person as attorney-in-fact for the FDIC and relies on a different limited power of attorney, which was recorded on a different date — an earlier date. The Old Allonge also listed a different (incorrect) date for the Note. In any event, both the Old Allonge and the First Allonge purport to accomplish the exact same thing:

the Truman Trustee's loan document copies are inaccurate and that the First Allonge and the Second Allonge are not actually affixed to the Note.

But the bankruptcy court considered all of the evidence and weighed it in the context of the arguments presented. It found the Truman Trustee's evidence strongly supported its standing. It also found Meier's evidence to be lacking and susceptible to evidentiary challenges. The court considered Meier's evidence but included its evidentiary concerns in factoring the weight it should be given. This led the court to conclude that it could not "really give them as much credit as Ms. Meier would like me to." Dec. 10, 2020 Hr'g Tr. at 20:6-7. Indeed, our review of the evidence shows that Meier failed to lay any foundation tying her loan document copies to a specific time period and a specific procedural posture that would tend to demonstrate that they are true, correct, and complete copies of the original loan documents as they appeared at the time U.S. Bank transferred possession of the original Note to the Truman Trustee. Under similar circumstances, we have observed that "the absence of indorsements [or allonges] on some note copies does not by itself cast genuine doubt on the authenticity of indorsements [or allonges] appearing on other copies of the same note." *Arriola v. Naylor (In re Arriola)*, BAP No. CC-15-1092-KuFTa, 2016 WL 1384788, at *2 n.3 (9th Cir. BAP Apr. 5, 2016) (citing *In re Baroni*, 2015 WL 6941625 at *5–6).

---

the transfer of the right to enforce the Note from the FDIC to U.S. Bank.

Put bluntly, Meier simply does not believe that the documents the Truman Trustee submitted as the Note, including the two allonges, are accurate or that the Truman Trustee qualifies as a PETE. But the bankruptcy court weighed the evidence. It credited the Truman Trustee's documentary evidence and the Dawson declaration while finding Meier's evidence led to nothing but mere speculation. Based on its view of the evidence, the bankruptcy court determined that the Truman Trustee is the holder of the Note, is the "person entitled to enforce" it, and thus had standing to file its proof of claim. None of Meier's arguments regarding the allonges and the varying copies of the loan documents demonstrate any factual or legal error in the bankruptcy court's controlling determination.[7]

---

[7] Even if the allonges were not adequately affixed to her Note, this at most would have prevented the Truman Trustee from qualifying as a "holder" of the Note. *Veal* observed that a creditor alternately can establish its PETE status by demonstrating that it is a "nonholder in possession of the [note] who has the rights of a holder." *In re Veal*, 450 B.R. at 911 (quoting U.C.C. § 3–301(ii)); *see also* Cal. Com. Code § 3301(same). As *Veal* explained, the failure of the transferee in possession of the note to obtain valid indorsements "does not prevent [the transferee in possession] from being the 'person entitled to enforce' the note . . . ." 450 B.R. at 911. The transferee in possession still qualifies for PETE status so long as the transferee can demonstrate both the fact of delivery of the note and the fact that delivery of the note was given for the purpose of qualifying the transferee for PETE status. *Id.* at 911-12 (citing U.C.C. § 3–203(a)); *see also* Cal. Com. Code § 3203(a) ("An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."). In this case, the First and Second Allonges — even if inadequately affixed to the Note — still evidenced the chain of deliveries of the original Note from the FDIC to U.S. Bank, and from U.S. Bank to the Truman Trustee. They also evidenced the purpose of these deliveries: to enable the transferee in each instance to enforce the Note.

### 3. Any securitization of the Note does not affect the Truman Trustee's standing to file the proof of claim.

Aside from her arguments regarding the allonges, all of Meier's other arguments on appeal pertain to **ownership** of the Note — as opposed to who is entitled to enforce the Note. These ownership-related arguments include her contention that Downey securitized or sold her loan at the time of origination, that Meier's loan was not part of the portfolio of loans the FDIC transferred to U.S. Bank, and that U.S. Bank never paid any consideration in exchange for ownership of the loan.

Meier's ownership-related arguments do not improve her position. As recognized by the bankruptcy court, securitization does not defeat the noteholder's PETE status, nor is it of any concern to Meier as the maker of the Note. Indeed, it is well established that "[s]ecuritization merely creates a separate contract, distinct from [the maker's] debt obligations under the note and does not change the relationship of the parties in any way." *Boone v. Deutsche Bank Nat'l Tr. Co.*, Case No. 2:16-CV-1293-GEB-KJN PS, 2017 WL 117966, at *6 (E.D. Cal. Jan. 12, 2017) (cleaned up).

In any event, Meier conflates the issue of ownership with the issue of who is entitled to enforce her Note. The Commercial Code makes clear that a party may qualify for PETE status even though it does not own the promissory note. As stated in Cal. Com. Code § 3301, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

17

*Veal* explained the importance of the distinction between PETE status and ownership of the note:

> [T]he rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, [who] the maker must pay in order to avoid defaulting on the obligation. By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay).

*In re Veal*, 450 B.R. at 912 (cleaned up).

As *Veal* held, PETE status — not ownership of the note — determines who has standing to file a proof of claim. *Id.* at 913. The ultimate ownership of the note — who ultimately is supposed to receive the payments the debtor has not made in this instance — does not impact our PETE analysis, nor is it the debtor's concern where her payments are ultimately supposed to go. In short, Meier's arguments pertaining to ownership of the Note are irrelevant to the issue of who was entitled to enforce the Note and who thus had standing to file a proof of claim.

**B.    Appeal from order granting relief from stay.**

Meier essentially relies on the same arguments in support of her appeal from the relief from stay order. She makes the same irrelevant points challenging the Truman Trustee's ownership of the Note — as opposed to its entitlement to enforce the Note. She also reiterates her contentions regarding Dawson's declaration testimony and regarding her

18

belief that the First and Second Allonges were not affixed to the original Note.

The legal standard for establishing standing to seek relief from stay is significantly more liberal than the standard for standing to file a proof of claim. In the relief from stay context, the creditor can establish its standing merely by demonstrating the existence of "a colorable claim to enforce a right against property of the estate." *Id.* at 914-15 (citing *United States v. Gould (In re Gould)*, 401 B.R. 415, 425 n.14 (9th Cir. BAP 2009)).

There are several reasons why a more-liberal standing standard is applied in the relief from stay context. These reasons include the summary and expedited nature of relief from stay proceedings and the fact that such proceedings cannot and do not finally determine the parties' respective rights in the property that is the subject of the motion. *Id*. at 914 (citing *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–41 (9th Cir. 1985)).

Here, the Dawson declaration filed in support of the Truman Trustee's relief from stay motion not only covered the same points regarding the Note and the allonges we discuss above but also attested to the existence and recording of the Deed of Trust and the two assignments of the Deed of Trust. Under California law, the beneficiary under a deed of trust — or its successor by assignment — may initiate nonjudicial foreclosure proceedings against the borrower regardless of whether the beneficiary demonstrates its possession of the note secured by the deed of trust. *See Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 613 B.R. 537, 545 (9th Cir.

BAP 2020) (citing *Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 204 Cal. App. 4th 433, 440–42 (2012)). This right to foreclose under state law constitutes the requisite colorable claim and the attendant standing to seek relief from stay to foreclose. *Id.*

Alternately, the same facts that established the Truman Trustee's standing to file the proof of claim also were sufficient to establish its standing to seek relief from stay. Once the Truman Trustee established its entitlement to enforce the note, its right to additionally enforce the deed of trust naturally followed as a matter of law. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 927 (2016) (citing Cal. Civ. Code § 2936); *see also Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

Accordingly, the Truman Trustee more than met its burden to establish its standing to seek relief from stay. And the bankruptcy court correctly determined that the Truman Trustee had standing.

Meier forfeited any other arguments she might have made to challenge the court's relief from stay order by failing to include them in her opening appeal brief. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

## CONCLUSION

For the reasons set forth above, we AFFIRM both the bankruptcy court's order overruling Meier's claim objection and the order granting the Truman Trustee's motion for relief from the automatic stay.